Mr. Justice NELSON-
delivered the opinion of the court. ■
1 One of the grounds set up in the return'to the rule to show ■cause is, that .on the 10th of August, 1867, while Judge Fisher,'one. of the justices of the Supreme Court, was'holding a criminal court in this district, the. relator had been guilty of contemptuous language towards'the said judge in the progress of a trial.therein, and for which the said justice disbarred him from the privileges of attorney.and counsellor of the Supreme Court.- That, at the time of the coirimi-tting of the contempt,' Judge Fisher was holding, not a criminal, but a Supreme Court, and exercising its criminal jurisdiction ,as such;-that there is no criminal court in.this district, and, therefore, no judge of a criminal court; and that the contempt committed before the judge was a -contempt of the . Supreme Court. That the act of March- 3d, 1863,- abolished both the circuit and criminal courts oí the district, and conferred -all their powers and jurisdiction upon the Supreme Court-created by the act.
We think a reference to this act of March 3d, 1863, reorganizing the courts in this district, will .show that' this is-, an erroneous construction. It will be seen, by reference to *371 this organic act, that the new Supreme Court of this district has conferred upon it only the same powers .and jurisdiction as was possessed by the circuit court just abolished. This ■ circuit court possessed, at the time, no original criminal jurisdiction whatever, nor had it, since the 7th of July, 1838; for an act of that date established a criminal court, upon which was conferred all the criminal jurisdiction of the district.
A writ of'error lies from the circuit court to this criminal court, and, doubtless, does from the present Supreme Court to the criminal court of the district.
The circuit court had originally been invested with all the powers of a district court of the United States; but these were taken from it in 1802, and a district court established within the district, to be held by the chief justice of the circuit court. These courts, the district and criminal, are preserved by the act of 1863 reorganizing the courts, and are to be held in the same manner, and with the same powers and jurisdiction, — the one as possessed by the district courts of the United States, and the. other as possessed by the old crimirial court of the district. The only change made is, that instead of each court having a judge or judges appointed to hold it, any justice of the Supreme Court may hold the same. Under the old law, 20th of February, 1839, in case of the inability of the judge of the criminal court to hold tire same, one of the judges of the circuit was author-' ized to hold it
It is plain, therefore, that, according to a true construction of the act of 1863, reorganizing- the courts of this district, the Supreme Court not only possesses no jurisdiction in criminal eases, except in an appellate form, but that there is established a separate and independent court, invested with all the criminal jurisdiction, to hear and punish crimes and offences within the district. And, hence, one of the grounds, if not the principal one, upon which the return places, the right and power to disbar the relator, fails; for we do'not understand the judges of -the court below .as contending that, if Judge Fisher, at the time of the conduct and wor Is spoken by the relator before him, or in his pres *372 erice, was not holding the Supreme Court of the district, but was holding a court distinct from the Supreme Court, that they possessed any power .or jurisdiction’ over the subject of - this contempt as complained- of, otherwise the case would -present the anomalous proceeding-of one court taking cog-, riizance of an alleged contempt committed before and against another court, which possessed,ample powers itself to take care of its own dignity and punish the offender. Under such circumstances, and in this posture of the cáse, it is plain that no authority or power existed in the Supreme Court'to pun-fish'for the contempt thus committed, even without reference to the act pf-Congress of 1831,* which hr express terms restricts the power, except for “ misbehavior in the preserice of said courts, or so near thereto as to obstruct the administration of justice.”
■Another ground relied on in the return for disbarring the relator is, that his conduct was not merely a contempt of the authority of the Supreme Court, but was, also, gross misbehavior in his office as an attorney generally, and that, for this reason also, his offence was cogriizable by the court in general term, and punishable irrespective of the doctrine of contempts. The judges admit that the rule to show cause ordered against him at the general term, ignored the order made by Judge Fisher disbarring the relator, and.called upon him to answer simply for the act and conduct specified as for a contempt; yet they insist that, after the return of the relator to the rule in answering the contempt, they, had a right, in considering the ánswer,-if any other offence appeared therein cognizable by the court,' it was competent to take notice.of it, and inflict punishment accordingly.
We cannot assent to this view. It assumes the broad propositibn, that the attorney maybe called Upon to answer an offence Specified, and, when the answer comes in, without any further notice or opportunity of defence or explanation, punish him for another .and distinct offence. Certainly no argument can be necessary to refute such a proposition. *373 It violates the commonest and most familiar principles of criminal jurisprudence. It is true, where a contempt is ' committéd in the presence of the coiirt, no other notice is usually necessary; but a proceeding to punish an attorney generally formisbehávior in his office, or for any particular . instance, of misbehavior, stands- on very different ground.. The rule to show cause is in the record. After reciting the . offensive language and. conduct complained of (ail of which occurred before Judge Fisher), it concludes in these wprds: “And said cohduct and language requiring, in our opinion, , investigation by this court, it is therefore ordered, that said Joseph H. Bradley show cause, on or béfore'the fourth day of November next, why he should not be-punished for contempt of this- court by reason of said offensive conduct-and language towards one of its members, and relating to the official acts of the said justice.” If will be seen that the offence charged against the relator, and for which he was called .upon to answer, was direct and specific, one well known to "the law and the proceedings of courts, — a contempt of the Supreme Court. And the offence being thus specified, he ,- was fully advised-of the matters .against which he was called upon to defend, and enabled to prepare his defence accordingly. That the relator so understood the charge is.apparent .from his answer, in which he expresses his satisfaction at the opportunity .afforded him to present to the court, his account of the -facts involved'in the case, and “to. purge himself from any intentional disrespect, contumely, or contempt towards the court,' or any member ..thereof, in the transactions referred to.”
' The order entered on the minutes of the court, after the answer to the rule to show cause, inflicting the punishment, confirms this view. It is found in the record, and is headed, as follows:
“In the matter of Joseph H. Bradley, Sr. — ■Contempt of court.”
'“Mr. Bradley having filéd his answer to-the rule of court served on him, and having been heard at the bar in support of his answer,'it is by the court ordered, that for the causes *374 set forth in said-rule, the, name of Mr. Bradley, be, stricken from the roll of attorneys, solicitors, &c., authorized'to practice in this court.”
The order, or judgment, seems to be in strict conformity to the offence charged ir£ the rule to show cause, namely, ■for contempt of court. ,
We do hot doubt the power of the court.to punish attorneys as officers of the.samé,sfor misbehavior in the practice of'the profession. ■ This power'has been recognized and enforced ever since the organization of courts, and the admission of attorneys to practice therein. If guilty of fraud against their clients, or of stirring,up,litigation by corrupt devices, or using the forms of la)w to further the ends of injustice; i® fine, for the commission of. any Qther ^ct■ of official or personal dishonesty,and oppression, they become' subject to the summary jurisdiction of the court. Indeed, in every instance where an attorney is charged by affidavit with fraud or malpractice in his profession, .contrary to-the principles of justice and common honesty, the court, on.motion, 'will order him to appear and answer, and'deal with-him according as the facts may appear in the case.' But, this is a distinct head of proceeding from that of contempt of court, ór of the members thereof, committed in open court, or in immediate view and presence, fending to interrupt its. proceedings, or to impair, the respect due'to its authority.- This ’distinction is recognized in .the act of 1831, already referred to, which, after providing for personal contempt in presence of'the court,, authorizes attachments to issue, and..summary punishment to be inflicted; for “the misbehavior of'the offi . ■cers of said courts in their-'offieial transactions.”.
Without pursuing this branch of the case farther, our cohelusion is—
First. That the judges of'the court below exceeded their authority in .punishing- the. relator for a- contempt of. that -. court on account of contemptuous conduct and, language be- '■ fpre the Criminal Court of thé District, or in the presence i of the judge of the same.
*375 Second. That they possessed no power to punish him,, upon a.n ex parte proceeding, without notice or opportunity of defence or explanation for misbehavior, or for any particular instance of the same generally in his office as attorney of the court, as claimed in the words of the return, “ irrespective of the doctrine of contempts.”
- The only remaining question is, whether or not, a writ, of -mandamus from this court is the appropriate remedy for the wrong complained of. This question- has already been answered by Chief Justice. Marshall, who delivered the opinion of the court in Ex parte Crane.* That was an application for a mandamus to the Circuit Court of the United. States for the Southern District of New York, commanding the court to review the settlement of several bills of exceptions. The learned Chief Justice observes: “A doubt has-been suggested respecting the power of the court to issue the writ. The question was not discussed at the bar, but has been considered by the jjudges. It is proper,” he observes, “that it'should be settled, and the opinion of fhe court announced. "We have determined that the power exists.” He then refers to the definition ánd office of the writ as known to the common law in England, and to the language of Blackstone in speaking of it, as follows: “ That it issues to the judges of-any inferior court, commanding them to do. justice, according to- the powers of .their office, whenever the same is delayed. Eor it is the peculiar business of the Court of King’s Bench to superintend all other •inferior tribunals,- and therein to enforce the due exercise ‘ of those judicial or ministerial powers with,which the crown or the legislature have invested them; and this, not only by restraining their excesses, but also by- quickening their negligence, and obviating the denial of justice.” The Chief Justice then refers to the 13th section oi; the judicial act, which enacts that the Supreme Court shall have power to issue writs of prohibition to the. District Courts when proceeding *376 ' as courts of admiralty and maritime jurisdiction; and wi’ifs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed-or persons holding offices ' under the authority of the United States. “A mandamus to an officer,” he observes, “is held to be the exercise of originál jurisdiction; but a mandamus to an inferior court of‘.the United States is in the nature of appellate jurisdiction”
Two of the judges dissented, and one of them, Mr. Justice. Baldwin, delivered an elaborate opinion adverse to the decision, in 'which every objection to the jurisdiction is very forcibly stated. Since, this decision the question has been regarded at rest, as will be seen from many cases in our re-pox’ts, to some of which we have referred.*
This writ is applicable only in the supervision of the proceedings of inferior courts, in cases where there is a legal right, without any existing legal remedy. It is-upon this ground that the remedy has been applied from an early day, indeed, since the organization of courts and the admission of attox’neys to pi’actice therein down to the present time, to correct the abuses of the infei'ior courts in summary proceedings against their officers, and especially against the attorneys and counsellor’s of the coux’ts. The order disbarring them, ór subjecting them to fine,or imprisonment, is not reviewable by writ óf’errhr, it not being a judgment in the'sense of the law for which this writ will lie. Without,-therefore, the' use.of the writ of maudamus, however flagrant the' wrong committed against-these officers, they would be destitute of any redress. The attorney or counsellor, disbarred from' caprice, prejudice, or passion, and thus suddenly’ deprived of the only means of an honorable support of himself and family, upon the contrary doetripe contended for, would be utterly remediless. -
It is true that this remedy, even, when liberally fexpounded, affords a far less effectual security to the occupation of attor *377 ney than is extended to that of every other class'ih the community, For we agree that this Writ does riot lie'to .control the judicial discretion of the judge'or • court; and hence, where the act complained of rested in the exercise of this discretion, thé'remedy fails:
. But this discretion is not unlimited, for if it be exercised with rrianifest injustice, the Court of King’s Bench will command its due .exercise.* It must be a sound discretion, and apcording to law. As sgi'd by Chief Justice Taney, in Ex parte Secombe,† “ The power,, however, is not an arbitrary' and despotic one, to be exercised at the pleasure of the court, or from passion,.prejudice, or personal .hostility.” And by Chief Justice Marshall,'in Ex parte Burr:‡ “The court is not inclined to .interpose, unless it Were'in a .case where the' conduct of the Circuit or District Court was-irregular,, or was flagrantly improper.”
We are not concerned, however, to exariiine in the present case how'far this court would inquire into any irregularities pr excesses of the court below in the'exercise of its discretion in making the order against the relator, as our decision is not alt all dependent upon that question. Whatever views, may be entertained concerning it, they are wTh'olly immaterial and unimportarit here. The ground Of our decision upon this branch of the case is; that the court below had, no jurisdiction to disbar the relator for aeon tempt committed before' another court. . The contrary must be maintained before this order can be upheld and the writ of mandamus denied. No amount of. judicial' discretion of a court can supply a defect or want of jurisdiction in the case., The subject-matter is •not before it; the proceeding,'is coram non judice and'void. Now, this want of jurisdiction of the inferior court in a'summary proceeding to remove an officer of the court, or, disbar an attorney or counsellor,.is ,one of the specific cases in which this Writ is the appropriate remedy. We.have already seen, from the definition and office of it, that it is issued'to'; the inferior courts “to enforce;the due.exercise of those judicial *378 or ministerial powers-with which the crown or legislature hav.e invested them; and this, not only by restraining their 'excesses, but also by quickening their negligence and obviating theif denial of justice.”* The same principle is also found stated with more fulness in' Bacon’s Abridgment, title-c>‘ Mandamus,”† “ to restrain' them (inferior courts) within their bounds, and compel them to execute their jurisdiction, whether such jurisdiction arises by charter, &c., being in subsidium jusiicice.”‡
The same principle is also stated by Chief Justice Marshall in Ex parte Burr. “There is then,” he observes, “no irregularity in the mode of proceeding which would justify the interposition of this court. It could only interpose on the ground that the Circuit Court had clearly exceeded its powers,.or, had decided erroneously on the testimony.” The case of Burr was malpractice, and stirring up litigation, to the disturbance and oppression of the community. The jurisdiction waj unquestionable. So. in Ex parte Secombe, Chief Justice Taney, after showing that the question was one of judicial discretion, observes, “We aré not'aware of any casé where a mandamus has issued to an inferior tribunal, commanding it to reverse or amend its decision, when the decision was in its nature a judicial act, apd within the scope of its jurisdiction-and discretion,” The case of Secombe was for a contempt.in open court, and the jurisdiction undoubted. -So was the case of Tillinghast v. Conkling, referred to by the. Chief Justice in his opinion. This writ has been issued i'n numerous cases by the Kiug’s Bench, in England, to inferior courts' to restore attorneys wrongfully removed. The cases are collected by Mr. Tapping.§ One of them w'as the case of an attorney suspended from practicing in the courts of the county palatine of Chester. • The reason given for issuing this writ is, that the office is of *379 public concern, and regards' the administration of justice,; and because there is no other-remedy.*
Cases are found also in many of the courts of the States. Among the more recent are three-cases !in California;† in New York;‡ in Pennsylvania,- Virginia, and Alabama. In several of the cases the remedy failed, as in Ex parte Burr, Secombe, and Tillinghast, the-court'having held, in the cases, that the questions involved were of judicial discretion. But the proceeding- is admitted to be ,the recognized remedy when the .case is outside of the. exercise" of this discretion, and' is one of irregularity, or against law, or of flagrant in-j ustiee, or without, j urisdiction.
- It will be seen that this opinion is wholly irrespective of the merits of .this unhappy controversy between the relator and'Judge Fisher, as the view we have taken of the. case does not in,any respect involve this question.- We can only regret the controversy, as between gentlemen of the highest respectability and honor, and express -the hope that reflection,..forbearance, and' tlje generous impulses that eminently belong to the members of their profession;,may lead to their natural fruits, — reconciliation-and. mutuáyand fraternal regard.
Our conclusion is, that'a peremptory writ of
Mandamus must Issue.

 § 1.

 5 Peters, 190

 Ex parte Bradstreet, 7 Peters, 634; Insurance Company v. Wilson’s Heirs, 8 Id. 291; Stafford v. Union Bank, 17 Howard, 275; United States v. Gomez, 3 Wallace, 753.

 Tapping on Mandamus, 13, 14.

 19 Howard, 13.

 9 Wheaton, 530

 3 Blackstone's Com. 111.

 Letter D., p. 273.

 See also Bacon, letter E., p. 278; and Tapping on Mandamus, p. 105, and the cases there cited.

 On Mandamus, 44.

 White’s case, 6 Modern, 18, per Holt; Leigh’s case, 3 Id. 335; S. C Carthew, 169, 170.

 People v. Turner, 1 California, 143, 188, 190.

 People v. Justices, 1 Johnson’s Cases, 181.

 5 Id. 190.

 Wallace, 825.