## In the Matter of S. D. PRYOR, an Attorney-at-Law—Proceedings for Contempt, etc.

1. ATTORNEYS-AT-LAW—*Punishable for Contempt.* For sneering, insulting and disrespectful language used by an attorney to a judge, before whom a matter is pending, concerning such matter, and the judge's ruling thereon, the attorney may be punished by a fine, as for a contempt.

2. —————— *Contemptuous Language.* Such language as the following, coming from an attorney to a judge in a matter still pending before him — "The ruling you have made is *directly contrary to every principle of law, and everybody knows it,* I believe;" and, that it is "my desire that *no such* decision shall stand unreversed in any court I practice in"—is insulting, and disrespectful.

3. —————— It is immaterial whether this language is used in oral address in the hearing of others, or in a written communication to the judge.

4. —————— *Obligations of Attorneys.* An attorney, as an officer of the court, is under special obligations to be considerate and respectful in his conduct and communications to the court, or judge.

5. COURT—*Forbearance—Duty.* A judge will wisely overlook any mere hasty unguarded expression of passion, or disappointment, even though disrespectful, or simply notice it by a reproof. But where an attorney insists upon a right to use such disrespectful language, or is in the habit of so using it, or fails when his attention is called to it, to apologize therefor, it may become the clearest duty of the judge to punish him for contempt.

6. CONTEMPTS; *Power to Punish; Questions on Review.* On an appeal from an order punishing for contempt, the mere question of the advisability of the court's action, is not the matter of consideration; it is the question of power, and whether the act or word punished is, in fact, a contempt.

### Error from Cowley District Court.

ALL the facts in this case, and all the proceedings of the district court from whose order *Pryor* appeals, are sufficiently stated in the opinion.

*J. Wade McDonald,* for appellant.

The opinion of the court was delivered by

BREWER, J.: Motions to dissolve certain injunctions were argued before Hon. W. P. CAMPBELL, district judge of the

13th judicial district.   The motions were taken under advisement, and a few days thereafter word was sent by the judge to the counsel for plaintiff advising him of the overruling of the motions.   This information was conveyed to the counsel for defendant, one of whom wrote and forwarded the following letter:

WINFIELD, COWLEY COUNTY, KANSAS, June 26, 1876.

HON. W. P. CAMPBELL—*Dear Sir:* Mr. Hackney this evening informed me that he had received a letter from you stating that you had overruled the motions to dissolve those injunctions.   I can hardly believe that such is the fact, *for it is directly contrary to every principle of law governing injunctions,* and *everybody* knows it, I believe.   Consequently we send herewith orders dissolving said injunctions.   But if you have concluded to overrule said motions, as Hackney says, you will please allow our exceptions to each and every of your rulings, and allow us time to make and file our case in supreme court, which we will do as quickly as it can be done; for it is our desire that *no such* decisions or orders shall stand unreversed in any court we practice in.   Also, fix terms for staying orders.        Yours respectfully,

PRYOR, KAGER & PRYOR.

The judge on the receipt of this letter construed it as a contempt—issued his warrant for the arrest of the writer, and after a hearing adjudged him guilty of contempt, fined him fifty dollars therefor, and suspended him from practice in the courts of that district until the fine should be paid. And the question presented for our consideration is, whether this ruling and order of the judge shall be set aside, or permitted to stand.   It appears from other testimony in the case, as well as from the intimations in the letter, that no orders had actually been signed.   Notice of his conclusions had simply been given by the judge, and the attorneys requested to prepare the formal order.   The matter was therefore still pending before him.

Upon this we remark in the first place, that the language of this letter is very insulting.   To say to a judge that a certain ruling which he has made is contrary to every principle of law, and that everybody knows it, is certainly a most

6—18 KAS.

severe imputation. The learned counsel for appellant says in his brief:

"There is nothing in Mr. Pryor's letter to Judge Campbell that is insulting, contemptuous, or even the least disrespectful. Mr. Pryor simply tells the judge, in a plain, matter-of-fact way, that he has committed an error of law in his decision, if such decision is as has been represented to him, and in that event requests that his exceptions thereto may be allowed, to the end that he may have an opportunity of presenting the matter to the supreme court for review. There is no reflection upon the motives of the judge in rendering such decision; or imputation upon his integrity; nothing in fact to which, in the light of reason and fairness, any possible intention of contempt can be attached. In the warrant issued for the arrest of Mr. Pryor, the judge states that the letter was written for the purpose of 'insulting, abusing, and intimidating' him. There is nothing insulting in the letter — unless it is an insult to this judge for an attorney to disagree with him upon a question of law; nothing abusive about it, unless it is the unpardonable temerity of the expressions that evidence the dissent on the part of the attorney from the exposition of the law by the judge; nothing about it calculated to 'intimidate,' unless it is the statement that the disputed question will be referred to the supreme court for review."

We cannot concur in this construction of the letter. It is not merely an assertion of a difference of opinion, but a charge that he has decided in a way that he as well as everybody else knew to be wrong. To say to a judge that his ruling is contrary to every principle of law, may be simply a reflection upon his intelligence; but to couple with it an assertion that everybody knows it, is clearly an imputation upon his integrity. How can a judge be honest, and yet decide contrary to that which he as well as all others knows to be the law?

We remark secondly, that an attorney is under special obligations to be considerate and respectful in his conduct and communications to a judge. He is an officer of the court, and it is therefore his duty to uphold its honor and dignity. Certain privileges attach to him by reason of such official position. He may in the trial of cases use language concerning witnesses, and parties, and all matters and things in issue,

which elsewhere and under other circumstances would be libelous. By virtue of this privilege, we often hear from the lips of counsel in argument, or read in the briefs filed in proceedings in error in this court, the most severe animadversion and criticism upon the conduct and rulings of the courts from which the proceedings are brought. They have the same right of criticising the ruling and conduct of those courts in proceedings pending here, that they have in those courts of criticising the actions and conduct under review there. In other words, the independence of the profession carries with it the right freely to challenge, criticise, and condemn all matters and things under review and in evidence. But with this privilege goes the corresponding obligation of constant courtesy and respect toward the tribunal in which the proceedings are pending. And the fact that the tribunal is an inferior one, and its rulings not final and without appeal, does not diminish in the slightest degree this obligation of courtesy and respect. A justice of the peace before whom the most trifling matter is being litigated, is entitled to receive from every attorney in the case courteous and respectful treatment. He is *pro hac vice* the representative of the law, as fully as the chief justice of the United States in the most important case pending before him. A failure to extend this courteous and respectful treatment, is a failure of duty; and it may be so gross a dereliction as to warrant the exercise of the power to punish for contempt. Now as we have said, the language of the letter is insulting. It would be so regarded outside of judicial proceedings, and in the intercourse of gentlemen. To charge another with knowingly doing an illegal act, would always be regarded as an imputation to be resented. Change the circumstances a little: suppose in a public trial in the court-house, after a ruling had been made, an attorney in the case should say to the court: "That ruling is not the law, and your honor knows it." Who would doubt that the court might rightly treat such language as contempt, and punish it accordingly? Yet practically that is this case. The fact that in the case supposed, others are listening, and

hear the words,.and in this the language reaches the judge alone, does not change the quality of the act. It will be borne in mind that the remarks we have made apply only while the matters which give rise to the words or acts of the attorney are pending and undetermined. Other considerations apply after the matters have finally been determined, the orders signed, or the judgment entered. For no judge, and no court, high or low, is beyond the reach of public and individual criticism. After a case is disposed of, a court or judge has no power to compel the public, or any individual thereof, attorney or otherwise, to consider his rulings correct, his conduct proper, or even his integrity free from stain, or to punish for contempt any mere criticism or animadversion thereon, no matter how severe or unjust. Nor do we wish to be understood as expressing any opinion as to the power to punish others than attorneys and officers of the court, for language or conduct even while the matter is pending and undetermined. Whether the same rules and considerations apply to them or not, we do not care to inquire. Such is not the case before us; and to this case alone do our remarks apply.

We remark again, that a judge will generally *and wisely* pass unnoticed any mere hasty and unguarded expression of passion, or at least pass it with simply a reproof. It is so that, in every case where a judge decides *for* one party, he decides *against* another; and ofttimes both parties are beforehand equally confident and sanguine. The disappointment therefore is great, and it is not in human nature that there should be other than bitter feeling, which often reaches to the judge as the cause of the supposed wrong. A judge therefore ought to be patient, and tolerant of everything which appears but the momentary outbreak of disappointment. A second thought will generally make a party ashamed of such outbreak, and the dignity of the court will suffer none by passing it in silence. On the other hand, a little thing which is properly unnoticed once, may by its repetition require notice and punishment. It is but a little matter to whisper a

single time in the presence of a court in session, but if repeated, and the monitions of the court disregarded, it may become not merely the privilege, but the clearest duty of the court to punish for contempt. So an attorney sometimes, thinking it a mark of independence, may become wont to use contemptuous, angry, or insulting expressions at every adverse ruling, until it becomes the court's clear duty to check the habit by the severe lesson of a punishment for contempt. The single insulting expression for which the court punishes may therefore seem to those knowing nothing of the prior conduct of the attorney, and looking only at the single remark, a matter which might well be unnoticed; and yet if all the conduct of the attorney was known, the duty of interference and punishment might be clear. We make these suggestions, not as intimating that such has been the prior conduct of the attorney in this case, for we neither know nor have heard anything outside of this single matter which reflects at all upon him. We do it simply to indicate that the wisdom or necessity of the court's action is not always disclosed by the single matter apparent in the record, and that therefore, in a matter like this, involving personal conduct toward the court, a large regard must be paid to its discretion. If the language or conduct of the attorney is insulting or disrespectful, and in the presence, real or constructive, of the court, and during the pendency of certain proceedings, we cannot hold that the court exceeded its power by punishing for contempt. See generally on the subject of contempts, 2 Bishop on Cr. Law, 5th ed, ch. 12, § 242, and following, and cases cited; 4 Blackstone, 283; *Com. v. Dandridge*, 2 Va. Cases, 408.

We remark finally, that while from the very nature of things the power of a court to punish for contempt is a vast power, and one which in the hands of a corrupt or unworthy judge may be used tyrannically and unjustly, yet protection to individuals lies in the publicity of all judicial proceedings, and the appeal which may be made to the legislature

for proceedings against any judge who proves himself unworthy of the power intrusted to him.

The conclusion then to which we have come is, that the order of the district judge must be affirmed. It perhaps should be added that in the long answer made by the appellant to the order to show cause why he should not be punished, he tenders no apology, and expresses no regret for the language used, but insists upon his right to use it. Order affirmed.

All the Justices concurring.