Mr. Chief Justice Alvey
delivered the opinion of the Court:
This is a proceeding instituted in this court, by way of information, under oath, by Henry E. Davis, Esquire, then and now a member of the bar of this court, and who was at the time of filing the information, the United States District Attorney for the District of Columbia, against the respondent, John H. Adriaans, also an attorney, and a member of the bar of this court, praying that said Adriaans be disbarred, and that his name.be stricken from the roll of attorneys and counsellors of this court, for alleged misconduct that shows him to be unfit to remain a member of the har.
It is shown by the record exhibits filed in the case, and by the allegations made in the information under oath, that in October, 1898, there was filed in the Police Court of this District an information against said Adriaans, charging that he wilfully and maliciously, or wantonly,’’and without cause, entered upon the land of one Peter Craig, and then and there committed a malicious trespass by severing from the freehold certain vegetable product then and there growing, contrary' to the provision of the statute in such case made and provided, and as contained in section 1184 of Rev. Stats. D. C. Adriaans appeared to the information and pleaded not guilty, and prayed trial by jury. The trial was accordingly had by jury, before Judge Kimball, one of the judges of the police court, and certain exceptions *41 were taken to the rulings of the court, hut such exceptions were not taken and prepared as required by the rules prescribed by the Court of Appeals, under the act of Congress of March 2, 1897. After verdict of conviction rendered, there was a motion filed by the traverser for a new trial, and there was also placed on file by him a paper purporting to be a motion in arrest of judgment. This paper was filed on the 25th of October, 1898, but was subsequently, that is to say, on the 4th of November, 1898, stricken from the files of the court, by order of the judge, as being scandalous and libelous. The motion for new trial was overruled, and the court thereupon imposed a fine of $100 upon the defendant, and, in default of payment of the fine, sentenced him to imprisonment in jail for three months, the period of imprisonment prescribed by the statute.
After this proceeding, that is to say, on the 5th day of November, more than fourteen days from the time the exceptions were noted on the trial, the defendant presented a hill of exceptions, but which the judge refused to sign, on the ground that, as to the exceptions noted on the trial, it had not been presented in time under the rules. But the judge did sign an exception in. a qualified form, as to the striking the motion in arrest from the files of the court, in which he stated, “if-the striking the motion in arrest of judgment from the files of the court was an appealable order and a proper subject of an exception, then he signed the exception to that act as of the 8th of November, 1898.”
The defendant, Adriaans, then came to this court, by petition, praying for the writ of mandamus or certiorari to the police court, by means of which, as it would appear, he sought to obtain a review by this court of the proceedings in the police court, and especially of the action of that court, in refusing to consider, and in striking from the files of the court, the paper entitled “ motion in arrest of judgment on verdict.” The paper, however, was not set out in the petition, but only referred to. The application was denied and the *42 petition dismissed by this court. " Whereupon the defendant made application to the Supreme Court of the United States, praying that the writ of certiorari might issue to this court requiring it to certify to that tribunal as well the record of the application made to this court, and which was refused, as the record depending in the police court, so that the whole record might be reviewed by the Supreme Court; or, in the alternative, that a mandamus might issue to this court requiring it to issue a mandamus or certiorari to the judge of the police court, in accordance with the prayer contained in his petition to this court, which had been dismissed. With the application to the Supreme Court was exhibited the full record of all the proceedings both in the police court and in this court on the petition filed herein, including the paper entitled “motion in arrest of judgment on verdict.”
The Supreme Court dismissed the application, and the defendant was left subject to the execution of the judgment of the police court rendered against him.
It was after the case against the defendant in the police court was thus disposed of, that the present information was filed for the disbarment of the defendant, for the scandalous and libelous matter attempted to be spread upon the records of the courts, as grounds for arresting the judgment against him.
The scandalous and libelous matter complained of is contained in the paper entitled “ Motion in arrest of judgment on verdict;” and that the full import and animus of that document may appear, it is proper that it be set forth in extenso. It is as follows :

“Motion in arrest of judgment on verdict.

“ (a) That the court, in the person of Ivory G. Kimball, erred in assuming jurisdiction to try this case then depending in the United States branch of the Police Court, for that the said Ivory G. Kimball has no color of right or title to the said office, and is occupying the same by usurpation *43 only, and that the same rightfully and by law belongs to Charles F. Scott, also one of the police j udges in and for the said District of Columbia.
“ (b) That the court erred in utilizing section 1184, R S. D. C., as a vehicle to determine a purely legal question of the right of possession, and thus transforming the Police Court of the said District of Columbia into a court to try ejectment proceedings cheaply, at the expense of the Government of the United States and of the District of Columbia.
“ (c) That the United States branch of the Police Court of the District of Columbia erred in assuming jurisdiction to determine the present cause, for that the information is signed, or purports to be signed, by one Henry E. Davis, as attorney of the United States in and for the District of Columbia, whereas in truth and in fact the said Henry E. Davis has no right or color of title in and to said office — his nomination therefor having been rejected by the Senate of the United States — and the said office is, in contemplation of law, vacant. Moreover, the said Henry E. Davis was and is particularly disqualified from filing the present information, for that he has been for years the attorney of the real prosecuting witness in this cause, to wit, Isaac S. Lyon, and in consequence of financial dealings between the said Lyon and the said Davis a judgment at law was obtained by Lyon against Davis, numbered 41,964 on the docket of the Supreme Court of the District of Columbia; and in working out the said judgment, it is evident, by this case, that the said Davis is selling the powers of the said office to Lyon. Said information is also signed by one Alexander P. Mullowney, as assistant attorney of the United States in and for the District of Columbia, who claims to be commissioned so to act by the said Henry E. Davis, when in truth and in fact the said Davis does not rightfully, or according to law, hold said office, and has no power to commission any person to assist him in its administration.”
The libelous and scandalous matter contained in the *44 foregoing paper, and which was intended to reflect upon the official conduct of Mr. Davis, the United States District Attorney, has been fully refuted, and shown to be without the slightest foundation in truth and fact, not only by the sworn allegations contained in the information, but by accompanying affidavits filed therewith. Upon filing the information there was rule made upon the defendant to answer, and to show cause against the disbarment prayed. The defendant, accordingly, answered; and in his answer he says, that he is advised by counsel and believes that the trial and proceedings mentioned in said information were irregular and without warrant of law, because of errors committed by the judge presiding at the trial, and also because said judge was without jurisdiction to preside; and he is also advised by counsel and believes “that the language and matter complained of in paragraph XIII of said information was not scandalous or libelous, and that the publication thereof, in manner and form as set forth in said information, did not constitute a crime in law, but ivas privileged; and that he is further advised by counsel that the said information contains no matter forwhich the .respondent may be debarred from practice, or for which his name may be stricken from the roll of attorneys and counsellors of this court, as prayed in said information, or for which this respondent may be required to answer here or elsewhere.”
And in further answer, after saving and reserving to himself all benefit of exception to the proceedings by way of information, he says, “that at the time, and before, and for some time after the time when he filed in the police court the paper writing mentioned in said paragraph XIII of said information, and as therein alleged, he believed that the language and matter complained of, as aforesaid, was true, and that he had reason so to believe the same to be true, and that he filed said paper writing in good faith, in his own defense, and not for the purpose or with the intent *45 to injure the said Henry E. Davis; but that at some time since said paper was filed in the police court, and after the same was stricken from the files thereof, to wit, on or about May 15, 1899, this respondent, upon reading the affidavit of said Henry E. Davis herein filed with said information, was satisfied therefrom that there was no facts to justify his further belief aforesaid, and he therefore now hereby withdraws the language complained of, as aforesaid, and disavows the same; and respondent further says, that the foregoing withdrawal and disavowal are made by him not as matter of defense herein, but merely for the purpose of doing justice to said Henry E. Davis as a member of the bar.”
After this answer was filed, the court desiring to have the matter fully presented and considered, ordered that the matter stand over, and that the case be argued at a time designated, and that notice be given the parties to that end. The case came on for argument, and was fully argued by counsel for and against the application.
This case, like all others of its kind, involves questions of a very delicate nature, and consequences of more than ordinary importance, and especially to the party against whom the proceeding is taken. To deprive a party of the privilege of pursuing his profession, can only be done by virtue of a power the existence of which is recognized as matter of necessity; and that power should only be exercised for very cogent reasons, and where it is necessary for the preservation of the integrity and purity of the profession, and the orderly administration of justice by the courts in which the members of the bar practice. Or, as said by Chief Justice Marshall, speaking for the Supreme Court, in the casé of Ex parte Burr, 9 Wheat. 529, — “On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken .from him. On the other, it is extremely *46 desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the court itself. If there be a revising tribunal, which possesses controlling authority, that tribunal will always feel the delicacy of interposing its authority, and would do so only in a plain case.” This was said on an application to the Supreme Court of the United States for a mandamus to the circuit court for the District of Columbia, to require the latter court to restore Burr, the petitioner, to membership of the bar from which he had been suspended.
The power of suspension or disbarment of an attorney from the right to practice in the court for cause shown, is quite different and distinct from the power to punish for contempt; though it is frequently the case, that the causes for removal from the bar may also present ground for punishment as for contempt. Ex parte Bradley, 7 Wall. 364,374; Beene v. State, 22 Ark. 151; In re Pryor, 18 Kans. 72. It is not by way of punishment, however, that the offending attorney is disbarred; but the court in such cases exercises its discretion, whether a party whom it has formerly admitted to the privilege of an attorney is a proper person to be continued on the roll or not. This is the principle laid down as unquestionable doctrine, by the Court of King’s Bench, after conference with all the judges, in the leading case upon the subject, of Ex parte Brownsall, Cowp. 829, 830; and which is quoted with approval by the Supreme Court of the United States, in Ex parte Wall, 107 U. S. 265, 273. See also cases of In re Weare, 2 Q. B. 439 for 1893; Ex parte Finn, 32 Oregon, 519.
As we have seen, the respondent in his answer alleges, and insists upon it as a defense to the rule requiring him *47 to show canse why he should not he disbarred, that the language and matter complained of in the information were not scandalous or libelous, and that the publication thereof as made did not constitute a crime in law, but were privileged. But whether the matter complained of constituted a technical or an indictable crime or not is wholly immaterial in this proceeding. Nor is there any privilege for the matter complained of, to which the respondent is entitled as an answer to the present information. Whether there has been a crime committed or not, in the charges made by the respondent, is not the question presented on this information; nor does the question of privilege arise. The court can not be precluded the right, by the suggestion of any such defenses, to determine the question, whether the respondent be a fit and proper person to remain a member of the bar of this court. That is the question to be determined here, and it does not depend upon any such defenses as those set up by the respondent in his answer. This is settled by clear and undoubted authority. Ex parte Wall, 107 U. S. 265; In re Weare, 2 Q. B. 439 for 1893; Rogers v. Green, 9 Col. 506; In re Philbrook, 105 Cal. 471.
The oath taken by the attorney pledges him to demean himself as an attorney and counsellor of the court uprightly and according to law. He and all other attorneys becoming members of the bar of the particular court in which the oath is taken, become officers of the court, and as such are bound to observe a proper decorum in their professional dealings and relations, not only with the court, but with their brother members *of the bar. He has no right to attempt to cast foul and unfounded aspersions upon the character and conduct of his brother members of the bar, any more than he has to asperse and defame, without justification, the character and motives of the judge upon the bench. Especially is he without warrant in an attempt to make the records of the courts, from the lowest to the highest, vehicles of maliqious scandal and libel of any member of the bar. *48 Upon any other principle for the government of the bar, it would be impossible to conduct business with decorum and with due regard to the orderly proprieties of a court of justice. To tolerate such a precedent as this case would make, would subject any attorney, in the performance of his duty, and upon any unfounded pretense supposed to be available to his adversary, to the most unjust and outrageous imputations upon his character and conduct. The bar are entitled to be protected against such abuse of privileges by any of its brother members. Indeed, the power of disbarment, as means of protection, would be of little practical use, if it were not applicable to such cases.
There is a recent case, decided by the Supreme Court of the State of Colorado, Rogers v. Green, 9 Col. 506, in which the power of disbarment was quite fully considered, and where the facts were somewhat analogous to those of the present case, in several particulars. In that case the proceeding was taken against the attorney for charging a judge and an attorney with bribery in proceedings pending in another court, and for attempling to remove the judge and attorney, when there was in fact no foundation or probable cause for the charge so made. In the opinion of the court it was said :
“ Neither the letter nor the spirit of the attorney’s privilege permits him to enter our courts and spread upon judicial records charges of a shocking and felonious character against brother attorneys, and against judges engaged in the administration of justice, upon mere rumors, coupled with facts, which should, of themselves, create no suspicion of official corruption in a just and fair mind. And although, in actions of libel and slander, it has been thought wise to exempt them from liability for defamatory words, published or spoken, in the course of judicial proceedings, provided such words are material, in a disbarment proceeding, the recognition of such a privilege could neither secure justice nor advance the independence of the bar. On the contrary, *49 its inevitable tendency would be to destroy the respect due to the profession as well as to the bench, and cripple the influence and usefulness of both.”
In this case there is no kind of palliation, nor any attempt made to show palliation, for the grossly outrageous charges set forth in the motion filed in arrest of judgment. We must assume that, as a lawyer, the respondent knew that no such matters as those alleged by him, of the usurpation of the bench by the judge, the wrongful and unauthorized holding of the office of United States District Attorney, and the corrupt collusion and abuse of the powers of that office, by the incumbent thereof, could be tried and determined on a mere motion in arrest of judgment of the police court. The charges therefore would seem to be malicious and wanton in the extreme. If they were made upon the supposition that they would disqualify the judge to sit in the case, or disqualify the District Attorney from further prosecuting the case, such charges were reprehensible in the severest sense of the term. At the time these charges were spread upon the record, Mr. Davis was the United States District Attorney, representing the Department of Justice of the United States Government, in this District, and as such was charged with the duty of prosecuting all persons accused of crime. The office is one of great responsibility and importance to the peace and well-being of the community; and it is an inexcusable offense in anyone to attempt by grave but unfounded charges, to destroy public confidence in the integrity and to bring suspicion and distrust upon the character of the incumbent of the office. It is true that the 'respondent, after he was confronted with the evidence of the falsity of the charges made against Mr. Davis, which he could not dispute, admitted the falsity of the facts alleged by him, saying that there were no facts to justify his further belief in the facts alleged by him, and he therefore then, by his answer, withdrew the language complained of, and disavowed the same. But he says he does so merely for the *50 purpose of doing justice to said Davis as a member of the bar. He does not, however, state what reason he ever had for believing in the truth of the facts stated by him, nor does he even express a regret for having made the infamous charges; nor does he attempt to excuse himself by showing that he was honestly deceived as to the truth of the facts alleged by him, upon making inquiry as to their truth or falsity. He simply says he believed they were true, and hence he made the allegations contained in the motion.
In the case of Ex parte Wall, 107 U. S. 265, hereinbefore referred to, the Supreme Court of the United States discuss with great fullness the question as to the conditions and circumstances under which courts exercise and enforce the power of suspension and disbarment of attorneys; and as the result of the review of a great number of authorities in that case, Mr. Justice Bradley, in the opinion of the court delivered by him, said:
“The proceeding is in its nature civil, and collateral to any criminal prosecution by indictment. The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. Undoubtedly, the power is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney. But when such a case is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by removing grossly improper persons from participation in the administration of the laws. The power to do this is a rightful one; and, when exercised in proper cases, is no violation of any constitutional provision.”
Upon full and careful consideration of the facts of this case, we are of opinion that the respondent, John H. Adriaans, ought to be disbarred as an attorney of this court; *51 and, therefore, we do hereby order that the said John H. Adriaans be and he is hereby disbarred from further membership of the bar of attorneys and counsellors of this court, and that his name be stricken from the roll of attorneys and counsellors thereof.
If the respondent should feel himself aggrieved by this judgment, and suppose that any fundamental right of his has been impaired or violated thereby, we are glad to know that he has a recourse for the correction of any error, if error there be, by an application to the Supreme Court of the United States. Ex parte Bradley, 7 Wall. 364; Ex parte Robinson, 19 Wall. 505; Ex parte Wall, 107 U. S. 265, 290.
A motion for rehearing made on behalf of the respondent was denied, and the following order was passed by the court:
Per Curiam : In the matter of the information against John H. Adriaans, wherein there is an. application for a rehearing.
There being no sufficient reason shown for such rehearing, the motion is overruled.
And because the matter stated in the application for rehearing is wholly irrelevant, and is manifestly intended as simply retaliatory, and as means of disparaging the personal character of a member of the Bar, that statement is hereby ordered to be stricken from the files of this court.