## DUKE v. COMMITTEE ON GRIEVANCES OF THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

### No. 6362.

United States Court of Appeals for the District of Columbia.

Decided March 9, 1936.

---

[1] Italics supplied.

Jesse C. Duke, of Washington, D. C., pro se.

Lucian H. Vandoren and Charles F. Wilson, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

An appeal by Jesse C. Duke from an order of the Supreme Court of the District of Columbia disbarring him from practice as an attorney at law of that court.

The facts involved in this case arose in the course of a certain criminal prosecution theretofore tried in the lower court, wherein an indictment was returned against 36 defendants charging them with conspiring together to commit, and with committing, certain offenses in violation of the act prohibiting the sale of intoxicating liquors within the District of Columbia. Moder v. United States, 62 App.D.C. 65, 64 F.(2d) 703. Before the trial of that case twenty-one of the defendants entered pleas of guilty. Thirteen of the defendants went to trial, with the result that five of them were found not guilty and eight were found guilty. Five of these appealed to this court.

Mr. Justice F. Dickinson Letts, an associate justice of the lower court, presided at the trial, and Mr. Harold W. Orcutt, an assistant United States attorney, represented the government as chief counsel.

At the time in question the present appellant, Jesse C. Duke, was an attorney at law admitted to practice in the Supreme Court of the District of Columbia. He did not appear as an attorney in the conspiracy trial until after the verdict of the jury was returned. He then entered his appearance therein as attorney for Adolph Rudy Moder, one of the convicted defendants. As such attorney Mr. Duke assisted in preparing the assignment of errors filed in the case, and also a bill of exceptions which was submitted to the court for allowance. The trial justice found the proposed bill of exceptions to be inadequate and defective, and declined to sign the same. Whereupon the counsel for the prosecution moved to strike the proposed bill and to substitute therefor a bill of exceptions prepared by them. Mr. Duke as attorney for Moder objected to the allowance of this bill of exceptions; nevertheless the trial justice found it to be correct and allowed it.

An appeal was thereupon taken to this court, Moder v. United States, supra. In this appeal Mr. Duke as attorney for Moder complained of the action of the trial justice in signing the bill of exceptions in question and in refusing to admit the defendants to bail and filed a written motion for a writ of certiorari to require the trial court to forward certain of its records to this court and to compel the trial justice to admit the defendants to bail. In this motion Mr. Duke used the following language concerning the action of the trial justice:

"* * * And thus the said trial justice has obstructed justice in the case of the appellants by denial of bail and by finally sending up to the Court of Appeals, when further delay was impossible, an inaccurate, incomplete and false bill of exceptions.

"15. Appellants, in view of all of the foregoing, charge that the said trial justice has intentionally and deliberately sent up to this Honorable Court a false, inaccurate, incomplete, deleted and diluted, bill of exceptions in this case, after being warned by counsel for appellants and after having access to the stenographic record and after full opportunity to read the same before certifying it to this court, and the United States Attorney stands equally guilty in this obstruction of justice, and falsification of records herein."

A motion was thereupon filed in this court by the United States attorney to strike the language above quoted, on the ground that it was scandalous and defamatory. Whereupon Mr. Duke filed an opposition to the motion in which he used the following language:

"This is ' no time for technicalities. Only the production of the official stenographic record taken below, under and subject to the rule of court and now in the possession or under the control thereof, can decide whether the charges so made are justified. * * * It seems obvious that our charge that he [Mr. Justice Letts] 'intentionally and deliberately sent up to this Honorable Court a false, inaccurate, incomplete, deleted and diluted, bill of exceptions' is justified."

This court granted the motion of the government to strike the language set

forth above, upon the ground that it was scandalous and defamatory.

Afterwards, Mr. Duke filed a motion for a rehearing of the foregoing order of the court in which he said:

"We most respectfully ask that the Court reconsider its ruling on the matter of bail in view of the fact that in this motion and its accompanying papers, counsel for appellants conclusively and beyond possibility of dispute, in his opinion, shows to the Court of Appeals that the trial judge has destroyed any possible belief in either his judicial discretion or his judicial or personal integrity because of his falsification of the record in this case. It is respectfully urged that this Court should review the facts heretofore presented on the question of bail, and those appearing in the United States stenographic transcript to which the Court now has access, and modify paragraph two of its memorandum opinion because of the proof now presented to the Court as to the total absence of judicial discretion—and even the absence of judicial integrity—of this trial judge, Honorable F. Dickinson Letts."

On August 3, 1932, in Moder v. United States, 61 App.D.C. 300, 62 F.(2d) 462, 465 we said:

"The charges made [by Mr. Duke] are conclusions rather than statements of definite facts, and, in a matter of this importance, we have been at pains to examine the bill of exceptions certified by the trial judge and we find that it fully covers the assignments of error prepared and filed with the trial court by counsel responsible for the charges we are discussing. It may well be, as is claimed in appellants' petition, that it does not include all of the exceptions taken on the trial, but it is not argued on behalf of appellants that any omitted exceptions were ever brought to the attention of the trial judge. We are therefore faced with a charge without supporting facts on which to base it. If there are supporting facts, we are entitled to have them shown, and counsel should be afforded an opportunity to bring them to our attention. We can only act when this is done.

"We have given careful thought and earnest consideration to the method and machinery by which this result can be accomplished, and have reached the conclusion that we should hear this aspect of the case separately from the merits of the appeal. To this end we shall appropriate for this purpose such time as is necessary at the convening of this court on January 3 next to enable counsel to present to us any facts which he may have to sustain the charge of deliberate falsity in the record on this appeal. A definite and succinct statement of facts supported by affidavits should be filed in the clerk's office of this court not later than December 27. A copy of any papers filed pursuant to this permission should be delivered on the same day to the United States attorney. The hearing on January 3 will be confined to the single question whether the record in the appeal in this case is a deliberate and premeditated perversion of the facts of the trial. If the United States attorney cares to be heard, we shall, of course, afford him such an opportunity. The matter will thus be disposed of, and the regular hearing on the appeal will abide the result."

In answer to the foregoing direction of this court Mr. Duke declined to submit any other papers and failed to appear when the case in which the foregoing order was entered was called to trial in regular course. This court nevertheless considered the appeal and affirmed the judgment of the lower court.

Afterwards, to wit, on September 21, 1933, in the case of Rasmussen v. Hoover, then pending and awaiting trial in the Supreme Court of the District of Columbia, Mr. Duke, appearing as counsel for the plaintiff, caused his client to verify and file the following affidavit of disqualification against Mr. Justice Letts.

"Mary Rasmussen, the petitioner in the above entitled cause, deposes and says that she verily believes that the Honorable F. Dickinson Letts, Associate Justice of the Supreme Court of the District of Columbia, in which court this cause is filed and pending, has a personal bias and prejudice against her; that she bases her belief as to the existence of such bias and prejudice upon the following facts and reasons, to wit: That her counsel, Jesse C. Duke, informs her that the said Justice deliberately and intentionally sent up to the Court of Appeals of the District of Columbia, in the case of Moder et al. v. United States of America, a false, inaccurate, incomplete, deleted and diluted bill of exceptions in July, 1932, and that said justice is guilty of falsification of records and obstruction of justice in that case; that the said Justice hand-picked the jury in that case and deliberately violated the rights of the poor people on trial before him; that the said

Justice is lacking in judicial integrity and common honesty, in his judgment, and particularly cannot be trusted to decide a case involving a poor person like the petitioner on one hand and a banker and government official of high standing on the other hand; that her said counsel has filed impeachment charges against the said Justice before the Judiciary Committee of the House of Representatives and that the said Justice has exerted every effort through his political friends to prevent a public hearing or investigation of said charges up to the present time; that such charges are also involved and presented in a petition for pardon by Dominick Caparrotta, upon the ground that his record was falsified by Justice Letts and he was thus prevented from securing a hearing on appeal on the true record, now pending before the President of the United States; that the petitioner verily believes that the said facts are true and requests that said Justice F. Dickinson Letts be disqualified under and by virtue of Section 21 of the Judicial Code.

   "[Signed] Mary Rasmussen
 "Sworn and subscribed before me this 21st day of September, 1933.
   "Frank E. Cunningham, Clerk
   "By Andrew A. Horner, Asst. Clerk.

 "I hereby certify that I am one of counsel of record for Mary Rasmussen, petitioner in this cause; that I prepared the accompanying affidavits of bias and prejudice and application for designation of another judge as her counsel and that I am informed as to the proceedings herein; that the information upon which the petitioner bases her affidavit of bias and prejudice was supplied to her by me and is true; and I further certify that such application and affidavit are made in good faith and not for the purpose of delay or hinderance of the said proceedings.

   "[Signed] Jesse C. Duke,
    "Attorney for Petitioner."

 Afterwards on October 10, 1933, the Grievance Committee of the Supreme Court of the District of Columbia filed a complaint against Mr. Duke based upon the foregoing facts, charging him with professional misconduct, prejudicial to the administration of justice, and meriting disbarment.

 In answer to these charges Mr. Duke filed a pleading in which he defended upon the ground that the charges made by him against the trial justice and the United States attorney were true. In the course of his defense he said:

 "The Court of Appeals was now as badly involved in this matter of the falsification of the bill of exceptions as Judge Letts and Rover. Respondent now repeats his charge that the conduct of the appellate judges in attempting to protect Judge Letts and Rover and actually placing the appellants on trial on a record which they knew to be false, was more reprehensible than the original falsification of records. * * *

 "It should be obvious to the Court that it has before it one of the most extraordinary criminal appeal cases in the history of the common law. It involves the judicial integrity and common honesty of six Federal judges and necessarily brings in question the reason why at least five of the nine justices of the United States Supreme Court voted to refuse certiorari and declined even to look at the Department of Justice record as to which it had before said Court a complete resume of the contents thereof in the memorandum of August 20th, 1932, giving the page numbers and details of the evidence of the falsification of the record."

 In his answer to the charges of the Grievance Committee Mr. Duke used also the following language:

 "The deed was done—and it was safe * * * except * * * that the defendant's counsel is one lawyer who will not stand for perjury and falsification of records in any court or by any court."

 Upon a full consideration of the matter the trial court in general term found the appellant guilty and entered an order of disbarment against him from which the present appeal is taken to this court.

 ■ The appellant undertakes to justify his language above quoted by affirming that his accusations are true—that in fact Justice Letts willfully signed and caused to be forwarded to this court a false bill of exceptions with the purpose of denying to the appellant his rights in the case.

 We have examined the record in that case, including the bill of exceptions as signed by Justice Letts, and we find that the accusations made against the justice are wholly unfounded and wrongful. In the course of these proceedings Mr. Duke was called upon by this court and by the trial court sitting in the present case to state the facts which he relies upon as proof of his accusations. He has not given any sub-

stantial answer to this demand except in one particular, and that is in relation to the impaneling of the jury in the Moder Case. It appears from the stenographic record in that case that when the jury was being impaneled Justice Letts questioned the members as to whether they had contributed to any organization in favor of, or opposed to, the National Prohibition Act (41 Stat. 305). Several of the panel answered in the affirmative. Whereupon Justice Letts excused them without a challenge from either side, in the exercise of his discretionary authority when impaneling the jury. The defendants in the case excepted to this action of the court. It is true that this incident was not referred to in the bill of exceptions, but it was not set out as an error in the assignment of errors filed by the appellants in the Moder Case. Under the rules of both the Supreme Court of the District of Columbia and this court a bill of exceptions is intended to cover only such errors as are set out in the assignment of errors. It is however clear that the action of the trial justice in this particular was not erroneous. Moreover, the record discloses that the defendants announced themselves as content with the jury which was finally selected and sworn in the case, at a time when their peremptory challenges had not been exhausted. It may be added that the charge of the court to the jury was correct and was not assigned as error. In fact, a reading of the transcript of the testimony and proceedings in the Moder Case is convincing of the fact that the conduct of the trial justice was fair and just throughout and beyond reasonable criticism; and the accusations made against him by appellant were false.

It is contended by Mr. Duke that the court has no power to punish an attorney for contempt of court where the act complained of is not committed in the presence of the court. This statement is not relevant in the present case, for it is not the object of this proceeding to punish Mr. Duke for contempt but to disbar him as an unfit person to remain upon the court's roll of attorneys. This distinction was well stated for this court by Chief Justice Alvey in the case of In re Adriaans, 17 App.D.C. 39, 46, a case involving questions substantially similar to those involved in the present case. In that case we said:

"The power of suspension or disbarment of an attorney for the right to practice in the court for cause shown, is quite different and distinct from the power to punish for contempt; though it is frequently the case, that the causes for removal from the bar may also present ground for punishment as for contempt. Ex parte Bradley, 7 Wall. 364, 374 [19 L.Ed. 214]; Beene v. State, 22 Ark. [149] 151; In re Pryor, 18 Kan. 72 [26 Am.Rep. 747]. It is not by way of punishment, however, that the offending attorney is disbarred; but the court in such cases exercises its discretion, whether a party whom it has formerly admitted to the privilege of an attorney is a proper person to be continued on the roll or not. This is the principle laid down as unquestionable doctrine, by the Court of King's Bench, after conference with all the judges, in the leading case upon the subject, of Ex parte Brownsall, Cowp. 829, 830; and which is quoted with approval by the Supreme Court of the United States, in Ex parte Wall, 107 U.S. 265, 273 [2 S.Ct. 569, 27 L.Ed. 552]. See also cases of In re Weare, 2 Q.B. 439 for 1893; Ex parte Finn, 32 Or. 519 [52 P. 756, 67 Am.St.Rep. 550].

"As we have seen, the respondent in his answer alleges, and insists upon it as a defense to the rule requiring him to show cause why he should not be disbarred, that the language and matter complained of in the information were not scandalous or libelous, and that the publication thereof as made did not constitute a crime in law, but were privileged. But whether the matter complained of constituted a technical or an indictable crime or not is wholly immaterial in this proceeding. Nor is there any privilege for the matter complained of, to which the respondent is entitled as an answer to the present information. Whether there has been a crime committed or not, in the charges made by the respondent, is not the question presented on this information; nor does the question of privilege arise. The court can not be precluded the right, by the suggestion of any such defenses, to determine the question, whether the respondent be a fit and proper person to remain a member of the bar of this court. That is the question to be determined here, and it does not depend upon any such defenses as those set up by the respondent in his answer. This is settled by clear and undoubted authority. Ex parte Wall, 107 U.S. 265 [2 S.Ct. 569, 27 L.Ed. 552]; In re Weare, 2 Q.B. 439 for 1893; People ex rel. Rogers v. Green, 9 Colo. 506 [13 P. 514]; In re Philbrook, 105 Cal. 471 [38 P. 511, 884, 45 Am.St.Rep. 59].

"The oath taken by the attorney pledges him to demean himself as an attorney and counsellor of the court uprightly and according to law. He and all other attorneys becoming members of the bar of the particular court in which the oath is taken, become officers of the court, and as such are bound to observe a proper decorum in their professional dealings and relations, not only with the court, but with their brother members of the bar. He has no right to attempt to cast foul and unfounded aspersions upon the character and conduct of his brother members of the bar, any more than he has to asperse and defame, without justification, the character and motives of the judge upon the bench. Especially is he without warrant in an attempt to make the records of the courts, from the lowest to the highest, vehicles of malicious scandal and libel of any member of the bar. Upon any other principle for the government of the bar, it would be impossible to conduct business with decorum and with due regard to the orderly proprieties of a court of justice. To tolerate such a precedent as this case would make, would subject any attorney, in the performance of his duty, and upon any unfounded pretense supposed to be available to his adversary, to the most unjust and outrageous imputations upon his character and conduct. The bar are entitled to be protected against such abuse of privileges by any of its brother members. Indeed, the power of disbarment, as means of protection, would be of little practical use, if it were not applicable to such cases."

The bill of exceptions filed by Mr. Duke in his present appeal contains a number of questions relating to rulings as to the admissibility of certain testimony in the trial of the case in the lower court. We do not consider it necessary to discuss these exceptions in detail, inasmuch as in our opinion they do not relate to the essential issues in the present appeal.

We agree with the opinion of the trial court in this case that the conduct of Mr. Duke amounted to professional misconduct prejudicial to the administration of justice, and we agree with the majority opinion that it merited disbarment. The order of disbarment therefore is affirmed.

Affirmed.

GRONER, Associate Justice.

I wish to notice a matter which is not adverted to in the opinion. Appellant some time ago filed in this court an affidavit under the provisions of section 21 of the Judicial Code (28 U.S.C.A. § 25), charging all the judges of this court with personal bias and prejudice. Because we agreed with the Circuit Court of Appeals in the First Circuit that the section does not apply to appellate tribunals, we rejected the affidavit. Kinney v. Plymouth Rock Squab Co., 213 F. 449. I think it proper to add to this the statement that a different view would paralyze the court and render the appeal ineffective, since there is no authority short of an act of Congress to reorganize this court by the selection of other judges, if all the present judges, on the filing of the affidavit, are thereby disqualified from doing any act in connection with the appeal. In these circumstances, unpleasant as it is to sit, there is, as I think, no other choice.

I concur in the conclusion of the court that the judgment of the trial court should be sustained. I think it cannot be doubted that it rests with the courts "to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed." Ex Parte Secombe, 19 How. 9, 13, 15 L.Ed. 565.

The charge that Judge Letts, in signing the bills of exceptions in the Moder Case, acted corruptly, has been specifically found to be untrue by the three judges of the lower court who heard the case; and an examination of the record decisively sustains that conclusion. The making of the charge, and its repeated reiteration, is, in my opinion, unprofessional conduct of an aggravated nature and, as the lower court found, most reprehensible. In the circumstances, I cannot say that the judgment of the Supreme Court of the District of Columbia disbarring appellant was either arbitrary or tyrannical.

STEPHENS, Associate Justice (concurring).

It is without dispute in this case that the appellant repeatedly charged an associate justice of the Supreme Court of the District of Columbia with corruptly obstructing justice by the authentication of a false bill of exceptions and by "handpicking" a jury in the case of Moder v. United States, 62 App.D.C. 65, 64 F.(2d) 703, and that he similarly charged a former United States District Attorney for the District of Columbia with obstructing justice by the preparation and submission to the trial justice for authentication of a false bill of excep-

tions. It is without dispute also that the appellant induced a third person to make similar charges against the associate justice in question and also a charge that the justice could not be trusted to decide a case involving a poor person on the one hand and a banker or government official of high standing upon the other.

Having become an associate justice of the United States Court of Appeals for the District of Columbia on October 7, 1935, I was not a member of the court during the germane proceedings antecedent to this appeal. I have, however, upon this appeal, examined the briefs of counsel and the record, and I am satisfied that the finding of the trial court sitting in general term is supported by evidence and is proper as a matter of law, and I am satisfied that the disbarment hearing was conducted according to law and that the appellant's assignments of error are without merit. With respect to the appellant's charge against the trial justice and the District Attorney with reference to the bill of exceptions in the Moder Case, there seems no basis for the same, except a literal incorrectness or incompleteness in the bill. This did not warrant the appellant's conclusion that there was corruption on the part of the associate justice and the District Attorney. The bill apparently was prepared, and in good faith, to embody such of the proceedings and exceptions as were necessary in respect of the errors assigned in the case in question.[1] The only basis for the appellant's conclusion in reference to the alleged corruption of the trial justice in the selection of a jury was that the justice on his own motion excused all jurors who had made financial contributions either for or against modifications or repeal of the national prohibition laws. The case in question, the Moder Case, was a liquor case, and the action of the trial justice was properly within his discretion.

It is clear that the charges made by the appellant against the trial justice and the District Attorney were false, and clear that the appellant either knew them to be false or made them in gross recklessness of the truth. There is ample authority under the circumstances for the action of the trial court in disbarring the appellant.

Respect for courts, judges, and prosecuting officials is necessary for the effectiveness of their functioning. That respect must rest first, of course, upon a foundation of actual integrity; but it rests necessarily also in part upon the support of the courts and their officials by members of the bar. Where a court and its judge and prosecuting official possess integrity, it is the duty of a member of the bar to defend that integrity, not to assail it. Deliberate, persistent and unfounded attack upon the integrity of the court and its officials is conduct which in my view unfits the person guilty thereof for continued membership in the bar.

---

[1] The rules of this court contemplate that a bill of exceptions shall contain only such matter as is germane to the errors assigned. See Rule VII, paragraph 9, and Rule VIII, paragraph 5.