William H. GRAY, Plaintiff,

v.

PETOSEED COMPANY,
INC., Defendant.

Glen KINARD, Plaintiff,

v.

PETOSEED COMPANY,
INC., Defendant.

James H. WILLIAMS, Plaintiff,

v.

PETOSEED COMPANY,
INC., Defendant.

Nos. 9:95–3882–19, 9:95–3883–19 and 9:95–3884–19.

United States District Court,
D. South Carolina,
Beaufort Division.

Feb. 5, 1996.

Order Denying Reconsideration
April 25, 1996.

John Paul Detrick of Peters, Murdaugh, Parker, Eltzroth and Detrick, Hampton, SC, for Plaintiffs.

Keating Lewis Simons, III, Charleston, SC, for Defendant.

## *ORDER*

SHEDD, District Judge.

Plaintiffs filed these actions in the Court of Common Pleas for Hampton County, South Carolina, asserting causes of action against defendant for fraud and compensatory contempt. Defendant thereafter removed these actions from state court and moved for their dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motions to dismiss and also have moved the Court to remand these actions to state court. After carefully reviewing these matters, the Court concludes that plaintiffs' claims for compensatory contempt should be remanded to state court and that plaintiffs' claims for fraud should be dismissed.

### I

In virtually identical complaints, plaintiffs allege that in 1989, they filed lawsuits against defendant in state court contending that defendant produced and sold to them a disease-contaminated watermelon seed that damaged their watermelon crops for that year. Plaintiffs further allege that during their 1989 lawsuits, they inquired of defendant by way of interrogatory for a description of all tests that defendant had performed on the watermelon seed to determine the nature of the alleged disease, and that following a court order compelling a response to this interrog-

atory, defendant stated that its tests were negative for the disease. Plaintiffs further allege that defendant's response to the interrogatory was false, but that in reliance on the response, they settled their lawsuits for an amount substantially less than their actual damages.

As noted, plaintiffs assert two causes of action: fraud and compensatory contempt. In their fraud claims, plaintiffs contend that defendant's alleged misrepresentation concerning its test results induced them to settle their claims in the prior suits for less than their actual damages and, but for the misrepresentation, they would have either demanded a larger settlement amount or proceeded to trial. In their compensatory contempt claims, plaintiffs contend that (1) defendant was under a state court order to disclose its results from the watermelon seed tests; (2) because defendant did not do so, it is in contempt of the state court; and (3) as a result of the contempt, they settled for less than their actual damages.[1]

## II

As an initial matter, the Court finds that defendant properly removed these cases from state court. Plaintiffs have alleged two causes of action and appear to seek damages in excess of $50,000 in each case. Because complete diversity of citizenship between the parties exists, the Court has subject-matter jurisdiction in these cases. 28 U.S.C. § 1332.

However, the Court finds that there is a jurisdictional problem with respect to the claims for compensatory contempt. Assuming *arguendo* that an *independent cause of action* for compensatory contempt exists in South Carolina, it is clear such a cause of action must be brought before the court that issued the order which allegedly was violated. As the South Carolina Court of Appeals has held: "Only 'the court offended has the power to punish for the contempt or to entertain proceedings to that end.'" *McGee v. McGee*, 287 S.C. 644, 340 S.E.2d 571, 573 (App.1986) (citation omitted); *see also United States v. Barnett*, 330 F.2d 369, 385 (5th Cir.1963) ("It is elementary that the court against which a contempt is committed has exclusive jurisdiction to punish for such contempt"); *E.E.O.C. v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 885 F.Supp. 488, 490 (S.D.N.Y. 1994) (applying principle); *Culpepper v. State*, 516 So.2d 485, 487–88 (Miss.1987) (citing cases). A contrary ruling would lead to the "anomalous proceeding of one court taking cognizance of an alleged contempt committed before and against another court, which possesse[s] ample powers, itself to take care of its own dignity and punish the offender." *Ex parte Bradley*, 74 U.S. (7 Wall.) 364, 372, 19 L.Ed. 214 (1868).

In short, the Court concludes that it properly has subject-matter jurisdiction over plaintiffs' fraud claims. Therefore, the Court will deny the motions to remand those claims. The Court further concludes that it does not have subject-matter jurisdiction over plaintiffs' compensatory contempt claims. Accordingly, the Court will grant the motions to remand those claims to state court.

## III

Turning to defendant's motions to dismiss the fraud claims, the Court first rejects plaintiffs' contention that collateral estoppel bars defendant from seeking dismissal of these claims. Plaintiffs base this contention on the fact that defendant filed an identical motion to dismiss in a separate case pending in state court and the state court judge denied the motion. Assuming *arguendo* that denial of a motion to dismiss in a separate proceeding can have the preclusive effect urged by plaintiffs, it does not in these cases because, in denying the motion to dismiss in the other proceeding, the state court judge did little more than pass on the issue, stating:

There is no dispositive South Carolina law on this particular issue. This court finds

---

1. The Supreme Court of South Carolina has recognized "compensatory contempt" as being "a money award for the plaintiff [presumably either party] when the defendant has injured the plaintiff by violating a previous court order." *Curlee v. Howle*, 277 S.C. 377, 287 S.E.2d 915, 919 (1982).

that plaintiffs' fraud cause of action alleging violation of a court order presents a novel question of law, *which should not be decided on the pleadings. In the interests of justice and fairness to the litigants, the court denies Petoseed's motion to dismiss the fraud causes of action so that all evidence can be presented and a record fully developed.*

*Jarrell v. Petoseed Co.,* Order filed Oct. 19, 1994, at 4 (94–CP–25–172) (emphasis added).

■ On the merits of the motions to dismiss, defendant contends that South Carolina law requires plaintiffs to tender and return the settlement amounts paid in the prior lawsuits before they may maintain their fraud claims. Defendant has cited numerous cases in support of this contention, including *Taylor v. Palmetto State Life Ins. Co.,* 196 S.C. 195, 12 S.E.2d 708 (1940), in which the state supreme court held:

> We presume that no doubt exists as to the soundness of the general proposition that where a party to a compromise desires to set aside or avoid a release duly entered into and be remitted to his original rights, he must place the other party in *status quo* by returning or tendering the return of whatever has been received by him under such compromise, if of any value, and so far as possible any right lost by the other party in consequence thereof. This rule obtains even though the contract of settlement was induced by the fraud or false representations of the other party. The rationale of the doctrine is that by electing to retain the property the party must be conclusively held to be bound by the settlement. The rule applies to actions ex *contractu* as well as to actions *ex delicto.*

*Id.* at 710. Plaintiffs seek to avoid this principle by attempting to distinguish *Taylor* and the other South Carolina cases on several grounds, none of which is persuasive. *See also Dunaway v. United Ins. Co. of Am.,* 239 S.C. 407, 123 S.E.2d 353 (1962). Because plaintiffs have failed to tender the settlement amounts they received in the prior suits, they

may not maintain their fraud claims in these cases.

## IV

The Court therefore **ORDERS** on this the 2nd day of February, 1996, at Columbia, South Carolina, that: (1) plaintiffs' claims for compensatory contempt be **REMANDED** to the Court of Common Pleas for Hampton County and (2) plaintiffs' fraud claims be **DISMISSED.**

### *ORDER ON RECONSIDERATION*

Plaintiffs filed these actions in the Court of Common Pleas for Hampton County, South Carolina, asserting causes of action against defendant for fraud and compensatory contempt. In their Complaints, plaintiffs allege, *inter alia,* that: (1) in 1989, they filed lawsuits against defendant in state court claiming that defendant produced and sold to them a disease-contaminated watermelon seed that damaged their watermelon crops for that year; (2) during their 1989 lawsuits, they inquired of defendant by way of interrogatory for a description of all tests that defendant had performed on the watermelon seed to determine the nature of the alleged disease; (3) following a court order compelling a response to this interrogatory, defendant stated that its tests were negative for the disease; (4) defendant's response to the interrogatory was false; and (5) in reliance on the response, they settled their lawsuits for an amount substantially less than their actual damages. In their fraud claims, plaintiffs contend that defendant's alleged misrepresentation concerning its test results induced them to settle their claims in the prior suits for less than their actual damages and, but for the misrepresentation, they would have either demanded a larger settlement amount or proceeded to trial. In their compensatory contempt claims, plaintiffs contend that (1) defendant was under a state court order to disclose its results from the watermelon seed tests; (2) because defendant did not do so, it is in contempt of the state court; and (3) as a result of the contempt, they settled for less than their actual damages.[1]

---

**1.** The Supreme Court of South Carolina has defined "compensatory contempt" as being "a money award for the plaintiff when the defendant has injured the plaintiff by violating a previous court order." *Curlee v. Howle,* 277 S.C. 377,

Defendant removed these actions from state court pursuant to 28 U.S.C. § 1441, and moved for their dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs opposed the motions to dismiss and also moved the Court to remand these actions to state court pursuant to 28 U.S.C. § 1447. By Order entered February 5, 1996, the Court remanded the claims for compensatory contempt to state court and dismissed the fraud claims. The Court found that defendant properly removed these cases from state court because plaintiffs each appear to seek damages in excess of $50,000 and because complete diversity of citizenship between the parties exists. However, the Court remanded the compensatory contempt claims because it concluded that those claims must be brought before the court that issued the order which allegedly was violated—*i.e.*, the Court of Common Pleas for Hampton County was the only court which has subject-matter jurisdiction over those claims. The Court then turned to consideration of the fraud claims and concluded that plaintiffs failed to state a claim for which relief may be granted because South Carolina law requires them to tender and return the settlement amounts paid in the prior lawsuits before they may maintain these claims, and they did not plead or otherwise demonstrate that they have done so.[2] *See* Fed.R.Civ.P. 9(c) (pleading condition precedent). The Court therefore dismissed the fraud claims.[3]

Plaintiffs have now moved for partial reconsideration and vacatur of the February 5 Order. Plaintiffs argue primarily that the Court should have remanded the entire actions rather than only the compensatory contempt claims for two reasons: (1) defendant improperly removed the cases from state court, and (2) once the Court determined that the compensatory contempt claims should be remanded, 28 U.S.C. § 1447(c) mandated remand of the fraud claims. Plaintiffs argue alternatively that the Court should not have dismissed the fraud claims because they present a novel question of law.[4] For the reasons set forth below, the Court will deny the motions.

**I**

It is evident that essential to plaintiffs' position concerning both the propriety of the removal of these cases from state court and the necessity of remanding them in their entirety is the Court's prior determination that it lacks "subject-matter jurisdiction" over the compensatory contempt claims. *See February 5, 1996, Order*, at 4. However, as explained below, plaintiffs' argument in this respect must fail. Upon reflection, while the Court adheres to its prior conclusion that the compensatory contempt claims must be heard by the Court of Common Pleas for Hampton County, the Court now believes that the rationale mandating this conclusion

287 S.E.2d 915, 919 (1982). *See also In re G.M.C.*, 61 F.3d 256 (4th Cir.1995).

2. For authority on this point, the Court primarily cited *Taylor v. Palmetto State Life Ins. Co.*, 196 S.C. 195, 12 S.E.2d 708, 710 (1940), in which the state supreme court held:

> We presume that no doubt exists as to the soundness of the general proposition that where a party to a compromise desires to set aside or avoid a release duly entered into and be remitted to his original rights, he must place the other party in *statu quo* by returning or tendering the return of whatever has been received by him under such compromise, if of any value, and so far as possible any right lost by the other party in consequence thereof. This rule obtains even though the contract of settlement was induced by the fraud or false representations of the other party. The rationale of the doctrine is that by electing to retain the property the party must be conclusively

held to be bound by the settlement. The rule applies to actions *ex contractu* as well as to actions *ex delicto*.

The Court also cited *Dunaway v. United Ins. Co. of Am.*, 239 S.C. 407, 123 S.E.2d 353 (1962).

3. The Court also rejected plaintiffs' contention that collateral estoppel bars defendant from seeking dismissal of these claims.

4. Although defendant did not formally move for reconsideration, it does request in its memorandum in opposition to plaintiffs' motion that the Court rescind that portion of the February 5 Order remanding the compensatory contempt claims. Not only has defendant never formally moved for such relief, but its request, first appearing in its memorandum which was filed more than 10 days after entry of the February 5 Order, can only be considered, if at all, under the standards applicable to Rule 60 rather than Rule 59(e). *See Dove v. CODESCO*, 569 F.2d 807 (4th Cir.1978).

is not a matter of the Court's "subject-matter jurisdiction." Instead, the Court now concludes that principles of comity and the orderly administration of justice, rather than lack of subject-matter jurisdiction, require the Court to decline to hear the compensatory contempt claims.

### A.

■ "The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441," *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994); and under § 1441, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Stated differently, only civil actions over which the district courts would have "original jurisdiction" if filed in district court may be removed under § 1441. *Hunter Douglas Inc. v. Sheet Metal Workers Int'l Assn., Local 159*, 714 F.2d 342, 345 (4th Cir.1983). Because 28 U.S.C. § 1332(a)(1) vests the Court with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between citizens of different states," civil actions which meet the criteria set forth therein may be removed pursuant to § 1441. As noted, the Court held in the February 5 Order that defendant properly

removed these cases from state court because in each case the parties are of diverse citizenship and the amount in controversy exceeds $50,000. Plaintiffs do not challenge either of these facts. Accordingly, the basic principles set forth above establish that the Court has federal subject-matter jurisdiction in the form of removal jurisdiction.

Because federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); the question becomes on what basis does the Court not consider the merits of the compensatory contempt claims. In stating previously that the Court did not have subject-matter jurisdiction over the compensatory contempt claims, the Court relied primarily on *McGee v. McGee*, 287 S.C. 644, 340 S.E.2d 571, 573 (App.1986) (citation omitted), in which the Court of Appeals of South Carolina held that "[o]nly 'the court offended has the power to punish for the contempt or to entertain proceedings to that end,'" and on *Ex parte Bradley*, 74 U.S. (7 Wall.) 364, 372, 19 L.Ed. 214 (1868), in which the Supreme Court recognized that a contrary ruling in this regard would lead to the "anomalous proceeding of one court taking cognizance of an alleged contempt committed before and against another court, which possesse[s] ample powers, itself to take care of its own dignity and punish the offender."[5] The

---

**5.** *See also* Fed.R.Civ.P. 4.1 Notes of Advisory Committee ("Contempt proceedings, whether civil or criminal, must be brought in the court that was allegedly defied by a contumacious act"); *International Union, UMWA v. Bagwell*, 512 U.S. 821, 829, 114 S.Ct. 2552, 2559, 129 L.Ed.2d 642 (1994) ("civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct"); *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428, 43 S.Ct. 458, 466, 67 L.Ed. 719 (1923) ("The degree of punishment for contempt ... is in the discretion of the court whose dignity has been offended and whose process has been obstructed"); *In re Debs*, 158 U.S. 564, 595, 15 S.Ct. 900, 910, 39 L.Ed. 1092 (1895) ("To submit the question of disobedience to another tribunal ... would operate to deprive the [contempt] proceeding of half its efficiency"); *Ex parte Tillinghast*, 29 U.S. 108, 109, 4 Pet. 108, 109, 7 L.Ed. 798 (1830) ("this court does not consider itself authorised [sic] to punish here for contempts

which may have been committed in [another] court"); *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986) ("Enforcement of an [order] through a contempt proceeding must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order"); *United States v. Barnett*, 330 F.2d 369, 385 (5th Cir.1963) ("It is elementary that the court against which a contempt is committed has exclusive jurisdiction to punish for such contempt"); *Wilson v. United States*, 26 F.2d 215, 218 (8th Cir.1928) ("it is the general rule that only the court which has been offended can exercise the power [to punish for contempt]"); *Merchants' Stock & Grain Co. v. Board of Trade of City of Chicago*, 201 F. 20, 26 (8th Cir.1912) ("there is no power in any except the court against which the contempt is committed to punish it [and] such court has exclusive jurisdiction to punish it"); N. Stockmeyer, *Compensatory Contempt*, 74 Mich. B.J. 296 (March 1995) ("The

Court considered this to be a jurisdictional issue primarily because of the language used in those cases as well as by many of the authorities cited *supra* in footnote 5. For example, in some cases, the courts expressly stated that the court whose order has been violated has "exclusive jurisdiction" to hear the contempt claim. *See, e.g., Barnett,* 330 F.2d at 385; *Merchants' Stock & Grain Co.,* 201 F. at 26. In other cases, the courts stated that only the court whose order has been violated has the "power" to hear the contempt claim. *See, e.g., Wilson,* 26 F.2d at 218; *McGee,* 340 S.E.2d at 573.[6]

Here, because the court allegedly offended is the Court of Common Pleas for Hampton County, the principle expressed by *McGee* and *Bradley,* as well as all other authorities of which the Court is aware, clearly dictates that resolution of the compensatory contempt claims be heard by that court.[7] However, notwithstanding the language used in the cases noted above, the Court now concludes that there is not a jurisdictional limitation per se with respect to these claims since "[t]he jurisdiction of the federal courts ... is a grant of authority to them by Congress," *Neirbo v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939); and Congress, by enacting §§ 1332(a)(1) and 1441, has granted the Court the jurisdiction to hear and determine these cases in their entirety, including the compensatory contempt claims. The Court therefore does not base its decision not to hear the compensatory contempt claims on lack of subject-matter jurisdiction. Instead,

the Court believes that the proper basis lies within the doctrine of judicial comity.

### B.

The Supreme Court has described the doctrine of comity generally as being a "fluid, ill-defined concept." *Williams v. State of N. C.,* 325 U.S. 226, 228, 65 S.Ct. 1092, 1094, 89 L.Ed. 1577 (1945). While the doctrine of comity is "invoked in an infinite variety of contexts to justify one governmental body's deference to another," J.C. Rehnquist, *Taking Comity Seriously: How To Neutralize The Abstention Doctrine,* 46 Start. L.Rev. 1049, 1066–67 (1994); the Court here refers to the form "whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere...." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 816, 113 S.Ct. 2891, 2920, 125 L.Ed.2d 612 (1993) (Scalia, J. dissenting). Pertinent to these cases, the Second Circuit has stated that "[g]enerally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts." *Zambrana v. Califano,* 651 F.2d 842, 844 (2d Cir.1981).[8] This form of comity—i.e., "judicial comity" or "comity among courts"—operates to "assure judicial efficiency and to reflect abiding respect for other courts...." *Consumers Union of U.S., Inc. v. C.P.S.C.,* 590 F.2d 1209, 1219 (D.C.Cir.1978), *rev'd on other grounds sub nom. GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,* 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). Although not directly on point, the following cases illus-

judge who presided over the action that gave rise to the order violated is the judge who tries the contempt proceeding"). Numerous other authorities are cited in *Culpepper v. State,* 516 So.2d 485, 487–88 (Miss.1987).

**6.** The Supreme Court has described the concept of jurisdiction as being "the power to hear and determine a cause." *United States v. O'Grady,* 22 Wall. 641, 647, 89 U.S. 641, 647, 22 L.Ed. 772 (1874).

**7.** The Court has uncovered one case—*Voorhees v. Albright,* 28 F. Cas. 1274 (C.C.D.N.J.1879) (No. 16,999)—in which this very matter appears to have arisen. In *Voorhees,* the defendant, asserting diversity jurisdiction, removed an action in which a contempt proceeding was pending from

state court. The federal court held that although the case was properly removed, the alleged contempt of the state court must be disposed of by the state court. The federal court therefore remanded the contempt proceeding to state court and retained the case itself for adjudication.

**8.** Because these cases are in federal court under the Court's diversity jurisdiction, the Court is essentially a coordinate court with the Court of Common Pleas for Hampton County. *See Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945) ("a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State").

trate the applicability of this form of comity to these cases.[9]

In *Gregory–Portland Independent School District v. Texas Education Agency*, 576 F.2d 81 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1423, 59 L.Ed.2d 634 (1979), an appeal was made to the Fifth Circuit for review of an order entered by the district court for the Southern District of Texas that operated to enjoin the defendant ("TEA") from complying with the terms of a prior order entered by the district court for the Eastern District of Texas. The Fifth Circuit reversed the Southern District's order, concluding that the Southern District should have either transferred the case to the Eastern District, or abstained and dismissed:

> In the instant case, a continuing power over the order prescribing TEA conduct existed in the Eastern District Court. By enjoining the TEA from following the order, the Southern District seriously interfered with the power of the Eastern District Court to maintain the integrity of the order. Moreover, all of plaintiff's constitutional challenges could have as easily been made in the Eastern District so it is apparent relief was possible in that district. We therefore hold that because the injunction against TEA interfered with the integrity of the order from the Eastern District, the Southern District Court should have declined jurisdiction.

*Id.* at 83.

Citing the *TEA* case, the Fourth Circuit applied the doctrine of judicial comity in *Ulmet v. United States*, 888 F.2d 1028 (4th Cir.1989). In that case, the plaintiff had filed suit in the United States Court of Claims seeking back pay and retirement benefits from the United States Army. While the Claims Court ruled in favor of the United States, the Federal Circuit disagreed on appeal and remanded the case to the Claims Court for a calculation of the relief due to the plaintiff. On remand, the United States argued that an intervening congressional act nullified the Federal Circuit's mandate. Because the Claims Court did not act immediately on remand, the plaintiff filed suit in the Eastern District of Virginia seeking an injunction ordering the United States to comply with the mandate of the Federal Circuit. The district court found that it had jurisdiction over the matter, but it declined to exercise its jurisdiction for comity reasons. The Fourth Circuit affirmed:

> We are convinced that to retain jurisdiction over Ulmet's claim would strike at the heart of judicial comity.... If the district court were to issue an injunction granting Ulmet the requested relief, it would certainly conflict with a subsequent determination by the Claims Court.... It would be a serious interference with the orderly administration of justice for this Court to order the Army to pay Ulmet interim back pay and benefits when the issue of his entitlement to those benefits is still pending before the Claims Court.

*Id.* at 1031. *See also Feller v. Brock*, 802 F.2d 722, 728 (4th Cir.1986) ("there is an underlying policy of judicial administration which counsels against the creation of conflicts" between courts).

■ While *TEA* and *Ulmet* do not involve contempt proceedings, their rationale is fully applicable here. Plaintiffs' allegations of defendant's defiance of the order issued by the Court of Common Pleas for Hampton County places the integrity of that court at stake, and because that court has the authority and ability to hold defendant in contempt if such action is appropriate, it would constitute a serious interference for this Court, or any other court, to entertain plaintiffs' compensatory contempt claims. For this reason, the Court declines to exercise jurisdiction over those claims.[10]

9. Equally illustrative of the applicability of the principle of comity is the "first-filed rule," which provides that where two federal courts have concurrent jurisdiction over the same issue, the second court should ordinarily decline to exercise jurisdiction. *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n. 2 (4th Cir. 1974).

10. The Court emphasizes that although this particular case happens to involve a request that a federal court adjudge an alleged contempt of a state court order, the ruling herein is, as the foregoing establishes, based on a concept of comity which exists among all courts, federal and state, and not necessarily on a concept of federalism. Thus, the Court expresses no opinion

## C.

■ ■ The Court rejects defendant's argument that the rule expressed above—*i.e.,* limiting the consideration of contempt matters to the contemned court—is not applicable to compensatory contempt claims because such claims involve civil contempt, which is remedial, rather than criminal contempt, which is punitive. In *Lorick & Lowrance v. Motley,* 69 S.C. 567, 48 S.E. 614, 615 (1904), a case involving compensatory contempt, the state supreme court recognized that the allegedly offended court should consider such claims:

> *All contempt proceedings* grow out of the duty of the individual to obey the orders of the court *and the court's duty to maintain its dignity and authority;* but the maintenance of the court's dignity and authority is not itself the ultimate purpose to be attained. This is rather a means to the practical end, that litigants who submit their personal and property rights to a tribunal established by law may have their rights as adjudicated by *that tribunal* protected and enforced by *its* power.

(emphasis added). It is clear from the highlighted portion of that opinion that the state supreme court considers the court whose order is allegedly violated to be the proper forum for adjudicating "all contempt proceedings"—including those involving compensatory contempt.[11]

Moreover, as a practical matter and as a matter of comity, there is no sound basis for distinguishing compensatory contempt from other forms of contempt because in all contempt proceedings it is necessary for the court involved to make a determination whether an order has been violated and, if so, to fashion some form of relief as a result thereof.[12] Both of these determinations are clearly better suited for the court whose order allegedly has been violated, since that court is in the best position to review and understand the circumstances surrounding the alleged contumacious conduct.

## II

■ Plaintiffs also argue that to the extent that the Court had jurisdiction over the fraud claims, it should not have dismissed them but, instead, should allow the record to be further developed because the claims raise a novel issue. Contrary to plaintiffs' assertion, their fraud claims do not raise an issue which is truly novel. Although the precise factual scenario may differ, the legal issue involved has been decided by the state supreme court. *See supra* note 2.

■ In any event, the Court does not find this principle of delayed resolution to be consistent with the Federal Rules of Civil Procedure. Indeed, while the state supreme court has held that Rule 12(b)(6) motions are especially disfavored where the complaint

---

whether abstention would also be appropriate under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. The Court notes, however, that this ruling is supported, at least in theory, by *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), in which the Supreme Court, in applying *Younger* abstention to bar an attempt to enjoin an on-going state contempt proceeding, stated: "Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is 'an offense to the State's interest. likely to be every bit as great as it would be were this a criminal proceeding." 430 U.S. at 335–36, 97 S.Ct. at 1217–18 (citation omitted). Because the cases before the Court stand in a different procedural posture than *Juidice,* and because the issue has not been briefed, the Court declines to consider the unnecessary issue of whether *Juidice* would provide an

additional basis for declining to hear the compensatory contempt claims.

11. *See also* Fed.R.Civ.P. 4.1 Notes of Advisory Committee ("Contempt proceedings, whether civil or criminal, must be brought in the court that was allegedly defied by a contumacious act"); *Bagwell,* 512 U.S. at 830, 114 S.Ct. at 2559 ("Civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct"); Stockmeyer, *supra,* at 296 ("The judge who presided over the action that gave rise to the order violated is the judge who tries the contempt proceeding").

12. It is not unreasonable to assume that the Court of Common Pleas for Hampton County may have an interest in this matter not solely because of plaintiffs' claims for compensation, but also in its own right to punish the alleged violation of its order.

raises a novel issue, *see, e.g., Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 456 S.E.2d 907, 909–10 (1995);[13] this principle is contrary to the very purpose of Federal Rule 12(b)(6).[14] As a mechanism for "test[ing] the legal sufficiency of the complaint," *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed. 2d 849 (1995); Rule 12(b)(6) is a tool "by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When properly applied, Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding," *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989); and the decision whether to grant a Rule 12(b)(6) motion involves no discretion: "[t]he complaint is either good or not good." *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir.1959).[15] In these cases, the fraud claims in the complaints are clearly "not good." Discovery will not change the clear fatal defect in plaintiffs' fraud claims.

### III

The Court therefore **ORDERS** on this the 25th day of April, 1996, at Columbia, South Carolina, that the motions to reconsider and vacate be **DENIED**.

13. Under South Carolina law, although a motion to dismiss involving a novel issue is disfavored, "[a]ll novel issues are not inappropriate for resolution" by such a motion. *Kennedy v. Henderson*, 289 S.C. 393, 346 S.E.2d 526, 528 (1986). Thus, in cases such as these where "a plaintiff has clearly not alleged facts sufficient to constitute a cause of action, a [moving party] is, of course, entitled to have his [motion granted] and be saved the expense and trouble of a trial." *Springfield v. Williams Plumbing Supply Co.*, 249 S.C. 130, 153 S.E.2d 184, 187 (1967).

14. The fact that the state courts of South Carolina apply this principle is not controlling because "[t]he issue of whether or not a federal court should dismiss a complaint for failure to state a claim upon which relief can be granted is … a question of federal law … even when, as here, a federal court sits in diversity…." *Sheldon v. Munford, Inc.*, 660 F.Supp. 130, 133 n. I (N.D.Ind.1987); *cf. Utility Control Corp. v. Prince William Constr. Co.*, 558 F.2d 716, 720 (4th Cir.1977) ("federal procedural standards govern whether summary judgment is appropriate in any case").

15. There are, of course, federal cases which indicate that Rule 12(b)(6) motions are "viewed with disfavor" and "should be rarely granted." *See, e.g., Hospital Building Co. v. Trustees of Rex Hosp.*, 511 F.2d 678, 681 (4th Cir.1975), *rev'd on other grounds*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *cf. Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 222 (4th Cir.1994) (recognizing, but not applying, rule that dismissal should be granted 'sparingly' in 'complex antitrust litigation'). However, this type of statement, which was similarly made in reference to summary judgment motions prior to the Supreme Court's 1986 *Celotex* trilogy of cases, does little to assist in the proper application of Rule 12(b)(6). As the Supreme Court has noted, if the standard for a Rule 12(b)(6) motion is met, "a claim *must be dismissed*, without regard to whether it is based on an outlandish theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1832 (emphasis added).