DANA CORPORATION, Plaintiff

v.

FIREMAN'S FUND INS. CO.,
et al., Defendants

The Celotex Corporation, Plaintiff

v.

Dana Corporation, Defendant

Nos. 3:83CV1153, 3:85CV7491.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 25, 1999.

Richard S. Walinski, Cooper & Walinski, Toledo, OH, John DeQ. Briggs, Howrey & Simon, Washington, DC, James F. Nooney, Eastman & Smith, Toledo, OH, for Dana Corporation, plaintiff.

Joan C. Szuberla, Theodore M. Rowen, Spengler & Nathanson, Toledo, OH, Matthew Gluck, Barry G. Sher, Guy Yonay, Fried, Frank, Harris, Shriver & Jacobson,

New York City, for Celotex Asbestos Settlement Trust, intervenor.

Steven Timonere, Doyle, Lewis & Warner, James F. Nooney, Eastman & Smith, Toledo, OH, for Fireman's Fund Insurance Company, American Insurance Company, and Association Indemnity Corp., cross-claimants.

James R. Knepp, II, Robison, Curphey & O'Connell, Toledo, OH, William J. Bowman, James P. Ruggeri, Hogan & Hartson, Washington, DC, Jack Zouhary, S.E. Johnson Companies, Maumee, OH, for Hartford Accident and Indemnity Co., defendant.

James F. Nooney, Eastman & Smith, Toledo, OH, for Celotex Corporation, defendant.

Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Anderson Memorial Hospital, movant.

Steven Timonere, Doyle, Lewis & Warner, Toledo, OH, for American Insurance Company and Association Indemnity Corp, counter-claimants.

James F. Nooney, Eastman & Smith, Toledo, OH, for Hartford Accident and Indemnity Co., and Celotex Corporation, cross-defendants.

## FINAL ORDER AND DECREE

CARR, District Judge.

This is an action between the Celotex Asbestos Settlement Trust (the Trust), successor to the Celotex Corporation (Celotex) pursuant to an plan of reorganization entered by the United States Bankruptcy Court for the Middle District of Florida (and confirmed by the United States District Court for that district), and the Dana Corporation (Dana). This suit arises from efforts, initially begun by Celotex and con-tinued by the Trust, to recover under an indemnity provision in a 1969 stock purchase agreement between a corporate predecessor of Celotex and Dana. Pursuant to that argument, Dana sold a wholly-owned subsidiary, the Smith & Kanzler Company of New Jersey (Smith & Kanzler) to Celotex' predecessor.

Smith & Kanzler sold and installed asbestos containing products. According to Celotex, the indemnity provision in the Smith & Kanzler stock purchase agreement entitled it to indemnification for losses incurred as a result of claims against Celotex based on sales and installation by Smith & Kanzler of its products.

On notification of Celotex' demand for indemnification, Dana in 1983 sued certain of its insurers in this court. On the insurers' motion, Celotex was joined as a party in that suit. Thereafter, Celotex sued Dana under the stock purchase agreement in the United States District Court for the Middle District of Florida. On Dana's motion, that court transferred the Celotex suit to this court, which consolidated the two cases.

To prevent irreparable harm from "wasteful, expensive and duplicative litigation" and potentially inconsistent judgments, the Hon. John W. Potter, to whom this case was then assigned, entered an injunction on October 27, 1987, directing that suits seeking to recover under the Smith & Kanzler stock purchase agreement were to be filed exclusively in this court.[1]

In 1989, Celotex filed bankruptcy proceedings in the Bankruptcy Court for the Middle District of Florida. That court issued a Modified Joint Plan of Reorgani-

---

1. The injunction notwithstanding, Anderson Memorial Hospital filed suit in a state court in South Carolina, allegedly on behalf of a world-wide class of institutional property damage claimants. That action had led to a finding of contempt against Anderson Memorial Hospital; proceedings relating to sanctions are pending.

zation (the Plan) on March 4, 1997. The Plan provides, in pertinent part, that:

1. "Dana liabilities [i.e., claims against Dana under the Smith & Kanzler stock purchase agreement] ... if any" were "preserved for prosecution subsequent to the Confirmation of the Plan" and transferred to the Trust; and

2. "The Trust shall have the authority and obligation to afford to holders of Allowed Asbestos Claims [i.e., persons and entities whose claims for either bodily injury or property damage were settled and paid by the Trust] whatever may be required to enable such holders to enforce the Trust's indemnity rights against Dana (including, but not limited to, the Dana liabilities), which holders shall have the same authority granted to the Trust under Section 1123(b)(3) of the bankruptcy code."

Following lifting of the stay entered when Celotex sought protection from the bankruptcy court, this court entered summary judgment on August 29, 1999, in favor of Dana and against the Trust on the Trust's claim under the indemnity provision in the Smith & Kanzler stock purchase agreement. As a result of that summary judgment, Dana has no liability to the Trust or any other individual who or entity which might assert a claim under the indemnity agreement. Thus, any assignment by the Trust of so-called "Dana rights" pursuant to the plan gives the claimants to whom such transfer may be made no actionable interest or claim of value.

There may be upwards of 800,000 claimants seeking, or who may seek, recovery against the Trust for the asbestos-related torts of Celotex. An unknown number of those claimants seek recovery under the indemnity provision of the Smith & Kanzler stock purchase agreement.

Following entry of summary judgment in Dana's favor, the parties requested entry of final judgment pursuant to Fed. R.Civ.P. 54(b). In addition, Dana has filed a motion for a permanent injunction. While the parties agree on the propriety and need for a Rule 54(b) judgment, they disagree over the need for and scope of any injunctive relief.

Principally at issue with regard to Dana's motion for a permanent injunction are:

1. Whether the Trust should be enjoined from transferring "Dana rights" pursuant to the provisions of the Plan; and

2. The nature of the notice that should be given to claimants about this court's prior orders and decisions, whereby all litigation relating to the indemnity provision may be brought only in this court and summary judgment has been entered in Dana's favor on the merits of the Trust's claim under the indemnity provision.

For the reasons that follow, Dana's motion for a permanent injunction shall be granted. The request for Rule 54(b) certification is well taken and shall also be granted.

## 1. Motion for a Permanent Injunction

Dana seeks a permanent injunction because it fears that dispersal of "Dana rights" to tens, if not hundreds of thousands of claimants by the Trust may ultimately result in renewed efforts by claimants to litigate claims under the indemnity provision elsewhere than in this court. Dana's concern is that fragmentation of the Trust's unitary claim under the indemnity agreement may, albeit in some presently unforeseeable form and forum, result in its being forced to litigate manifold cases in multiple jurisdictions. Were such to occur in even on a small scale, Dana would be disadvantaged by the expenses and uncertainty of duplicative litigation

and prejudiced by the risk of inconsistent judgments.

Dana has these concerns notwithstanding Judge Potter's injunction preventing litigation elsewhere, the contempt finding under that injunction against Anderson Memorial Hospital, and this court's favorable summary judgment decision on the merits of the Trust's claim under the indemnity agreement.

Dana's fears originate in the persistent desire of counsel for asbestos claimants to sue Dana in disparate courts of their choice, rather than in a single court. As justification for those fears, Dana points to its past experience with claims against it under the indemnity agreement. These began with litigation in the Southern District of Georgia, which transferred its case here in the interest of judicial economy. *Lee v. Celotex Corp*, No. 85–7090 (N.D.Ohio).

Notwithstanding that transfer, Celotex sued Dana in the Middle District of Florida, rather than in this court; that court (agreeing with Dana) ruled that the Celotex suit belonged here, and transferred the case, ·which was consolidated with Dana's suit against its insurers. In addition, Celotex filed more than thirty other actions in other courts; all those actions were based on the Smith & Kanzler stock purchase agreement indemnity agreement.

These efforts at claim-splitting (which Dana not inaccurately describes as "litigation terrorism") led to Judge Potter's 1987 injunction, in which he stated that "wasteful, expensive and duplicative litigation is irreparable harm." On appeal, the Sixth Circuit upheld Judge Potter's injunction. *Dana Corp. v. Fireman's Fund Ins. Cos.*, 865 F.2d 257, 1988 WL 132550 (6th Cir. 1988).

In the meantime, Celotex and Dana undertook to litigate the merits of Celotex' claim for indemnity in the *Lee* case. Judge Potter entered summary judgment largely in Dana's favor. While cross-appeals were pending in, Celotex filed its Chapter 11 petition in the bankruptcy court in the Middle District of Florida.

Rather than continuing actively to litigate the appeal in *Lee*, which would have led to a final determination on the merits of Celotex' claim for indemnification, Celotex sought and was granted a stay in that case. Celotex, moreover, did not seek leave to have its claim against Dana litigated on its merits in the bankruptcy proceedings.

Instead, and in derogation of Judge Potter's mandate in the 1987 injunction, Celotex, through its counsel, facilitated the attempt of Anderson Memorial Hospital to seek recovery against Dana on the indemnity provision through a lawsuit in a South Carolina state court. To accomplish that end, Celotex assigned a portion of its claim against Dana to a putative class of asbestos property damage claimants. The express purpose of that assignment was to enable counsel for Anderson to "pursue Dana Corporation under the indemnity provisions of the Smith & Kanzler Stock Purchase Agreement in South Carolina rather than Toledo." (Dec. 1, 1995 letter from Charles Schropp to various claimants' counsel) (Dana S.J.App. 823).

Dana filed a show cause motion in response to Anderson's South Carolina suit. Following extensive proceedings, Anderson was found in contempt of Judge Potter's injunction. Proceedings relating to sanctions remain pending.

While the contempt proceedings were underway, Celotex counsel informed Dana that, as part of the anticipated Plan of Reorganization, its unitary claim against Dana would be split among the claimants in the bankruptcy proceeding. Celotex concurrently asked Dana to make "a substantial contribution to the Trust." (Jan. 31, 1995 letter from Charles Schropp to

Richard S. Walinski and Gordon Harris) (Evid. Stip. No. 14 and Exh. 3 thereto).

The parties and lawyers in the Chapter 11 proceeding created the mechanism for claim splitting as presently found in the plan, and recited above. *See* Bankr.Stip. at 1–3, Dana S.J.App. 500–02. Thereby, Celotex's unitary claim against Dana is to be atomized into thousands of separate, free-standing claims assigned to individual asbestos claimants.

No similar provision applies under the plan to Celotex' insurers. From the record presently before this court, it appears that no similar provision has ever been included in other asbestos-related bankruptcy reorganization plans.

No one suggests any other explanation for this aspect of the plan other than a desire to deny Dana the protection of Judge Potter's injunction and deprive it of a fair opportunity to litigate the merits of the indemnification claim to finality in a single proceeding in a single court. I find that the motivating purpose of claim splitting among tens, if not hundreds of thousands of Celotex's claimants is to compel Dana to accede to the demand that it settle the Trust's claim for indemnity under the Smith & Kanzler stock purchase agreement.

As the bankruptcy proceedings were coming to their conclusion, a firm representing asbestos claimants, Greitzer & Locks, asked the bankruptcy court to interpret the indemnification provision in the Stock Purchase Agreement. Nov. 18, 1996 Hearing Tr. at 83–84. The Bankruptcy Judge confirmed that Celotex's claim against Dana was exclusively before this court. Greitzer & Locks thereafter filed objections to that ruling with the District Court, which altered the finding to state only that the Celotex/Dana litigation was currently pending in this court.

This action on the part of asbestos claimants' counsel constituted, in my view, an attempt, not dissimilar in its essential purpose to that undertaken by Anderson, to evade the effect of Judge Potter's injunction. According to Dana, the firm of Grietzer & Locks has been retained, along with Speights & Runyan (counsel for Anderson) to represent the Trust in the litigation against Dana. (1997 Annual Report of the Trustees at 20, Dana S.J.App. 796; 1998 Annual Report of the Trustees at 9, Supp. Schedule of Prof. Fees at 16–17). Thus, two firms that have actively sought ways to avoid the injunction by raising claims under the indemnity provision elsewhere than in this court are in part, if not primarily, responsible for guiding the Trust's efforts to enforce its claims against Dana.

The Trust itself manifested a desire to be released from the strictures of the injunction when it sought in January, 1997, to have this court dissolve the injunction. Had that motion been successful, the Trust would have been free to implement claim splitting as authorized by the plan and claimants would have been at liberty to file suits throughout the country.

Thus the Trust institutionally and some of its lawyers individually have taken steps even after the contempt finding against Anderson to relieve themselves of any restriction against pursuing multiple litigation in a variety of courts. They have not refuted, or even sought to rebut the sound policy reasons against claim splitting, multiple lawsuits, uncertainty, and potentially inconsistent verdicts. Neither the Trust nor claimants' counsel have advanced either a plausible policy argument or any cognizable benefits from claim splitting as embedded in the plan. The only possible reason for their approach is to disadvantage and prejudice Dana in its defense of the indemnity claim.

That being said, it must be acknowledged by Dana that at present, and for the

foreseeable future, it appears to face no immediate threat of multiple litigation. No actions are pending elsewhere, and none appear threatened. Since the denial of the Trust's motion to dissolve Judge Potter's injunction, the Trust appears not to have engaged in or encouraged activities designed to free itself and its claimants from the injunction's mandate. Assuming the grant of summary judgment in Dana's favor is affirmed on appeal, it would not appear to face, either in this court or anywhere else, any reasonable likelihood of further litigation relating to the indemnity agreement.

Dana's concerns relate to the possibility that the summary judgment might not be upheld on appeal. Even so, Judge Potter's injunction would still protect it against multiple suits. But that protection may not be entirely foolproof, because its utility depends on whether the Sixth Circuit upholds the finding of contempt against Anderson. If that finding were vacated or significantly altered, Dana might well find itself without a ready means of channeling litigation filed elsewhere into this court.

The Trust must necessarily argue, albeit solely for purposes of this proceeding, that neither of those eventualities will come to pass. But if both do occur, the efforts of this court to see to it that the merits of the Trust's claim are adjudicated in a single case in a single court will be irredeemably hampered if the claim splitting mechanism created by the plan is allowed to go forward.

This is of particular concern because the summary judgment decision did not address other defenses asserted by Dana in response to the Trust's demand for indemnity. If adjudication of these additional defenses were to become necessary, the objectives of finality and consistency could be defeated permanently if "Dana rights" had been scattered among countless numbers of claimants.

In response to these concerns and considerations, the Trust argues that, were it enjoined from distributing "Dana rights" as prescribed by the plan, it would find itself subject to differing commands from two separate courts of equivalent stature. On the one hand, the bankruptcy court, through a plan confirmed by the district court, has, according to the Trust, instructed it to distribute "Dana rights" automatically when it settles a claim. Noncompliance with the duty to make "automatic" transfers, the Trust suggests, may expose it to contempt citation in the Middle District of Florida were it to abide by a command from this court to make no transfer of "Dana rights". The Trust likewise apprehends that, if this court were to issue such command, contempt citation and sanction would follow noncompliance with this court's order.

My first obligation, when confronted with a potential conflict between an injunction issued by this court and the transfer provisions of the plan, is to seek to resolve such conflict in a way that does not offend the integrity of the plan while upholding this court's power to issue and enforce injunctions. If possible, the potentially conflicting order should be harmonized to avoid any conflict, and, as well, the risk that persons subject to those orders may be called on to show cause for noncompliance with both orders.

To that end, I conclude that the provisions of the plan, viewed in light of the fact that summary judgment has issued in Dana's favor, can fairly be read to leave nothing for the Trust to transfer. Under this reading, an order from this court preventing any putative transfers does not conflict with the plan. When the bankruptcy court confirmed the plan it could have anticipated that the Trust would prevail on its claim under the Smith & Kanzler stock purchase agreement. Now,

however, there is no basis for such anticipation. Neither that court nor the draftsmen of the plan could reasonably have intended or approved the meaningless act of transferring non-existent rights. This is especially true where the consequence of such transfer would be, at best, to engender confusion on the part of the transferees, and, at worst, to provoke litigation in violation of this court's injunction.

I find, therefore, no necessary inconsistency between the plan's requirement that the "Dana rights" be split and an order from this court that no transfer of such rights be undertaken. When drafted and confirmed, the question of whether there were any "Dana rights" was still unresolved. Entry of summary judgment in Dana's favor means that there are no such rights, and thus, there is, as a practical matter, no such rights to distribute to claimants.

Alternatively, if, despite the summary judgment decision, there is something for the Trust to transfer, its doing so under the authority of the plan denigrates this court's pre-existing injunctive order. The undoubted purpose of transferring "Dana rights" was to facilitate litigation against Dana in multiple jurisdictions. That purpose conflicts, however, directly with Judge Potter' pre-existing injunction. It is, as well, directly contrary to fundamental principles of judicial administration and the policies that favor consistency, certainty, and finality.

As the Trust itself has argued, "[u]nder well settled principles of comity, a court should not issue an order that interferes with the order of another court." (Sept. 15, 1999, letter brief). *See e.g., Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir.1981) ("[g]enerally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts"); *Martini v. Republic Steel Corp.*, 532 F.2d 1079 (6th Cir.1976) (contentions re. equitable decree should, pursuant to doctrines of comity, be brought in the court that issued the decree); *Gray v. Petoseed Co., Inc.*, 985 F.Supp. 625, 632 n. 9 (D.S.C.1996) ("[e]qually illustrative of the applicability of the principle of comity is the 'first-filed rule,' which provides that where two federal courts have concurrent jurisdiction over the same issue, the second court should ordinarily decline to exercise jurisdiction").

By purporting to endorse and mandate claim splitting, the courts in the Middle District of Florida have delegated to the Trust and asbestos claimants the ability potentially to nullify Judge Potter's injunction. In view of the preexistence of that injunction vis-a-vis the plan and its confirmation, principles of comity are upheld, rather than disregarded, by granting permanent injunctive relief in this case. Not to do so would place the integrity of Judge Potter's injunction at unjustifiable risk in the event this court's orders are reversed, or claimants and their counsel undertake other steps to evade the injunction.

With regard to the Trust's concerns about having to show cause why it should not be held in contempt for any failure to transfer "Dana rights" pursuant to the plan, I note that impossibility is a well-settled defense to a charge of contempt. *E.g., United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983); *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir.1996) (alleged contemnor may defend on basis of present inability to comply with the court's order).

Two considerations make it impossible for the Trust to comply with the plan's directive regarding distribution of "Dana rights." First, as practical matter, entry of summary judgment in Dana's favor, as already noted, leaves the trustees with nothing to distribute. The Trust can, and in my view, properly should decline to

issue purported transfers of worthless rights. When the plan was drafted, the "Dana rights" may have had some potential value; since entry of summary judgment in Dana's favor, they have none.

Second, the existence of an injunction from this court makes issuance of "Dana rights" impossible as a matter of law. In the context of conflicting court orders the Eleventh Circuit recently stated:

> A party demonstrates an "inability" to comply by showing that he has made " 'in good faith all reasonable efforts to comply.' " We do not interpret "good faith" and "reasonable efforts" to require necessarily that a party violate the order of one court to avoid violating the order of another court. We do not rule out that a party may be acting in "good faith" and with all "reasonable effort" to comply with a court order, but still violate that order, because compliance would cause the violation of other court orders. As such, evidence about whether, and to what extent, the [party] was unable to comply with the Decree in relation to the orders of other courts [is] material to the contempt determination.

*Chairs v. Burgess,* 143 F.3d 1432, 1438 (11th Cir.1998) (citations omitted).

In a footnote, the court in *Chairs* elaborated on the issue of possible contempt citation in the context of conflicting orders:

> We stress, however, that merely being subject to different court orders constitutes no defense to contempt. Despite the presence of conflicting orders from other courts, a district court can correctly conclude, after studying all the circumstances, that a party has failed to act reasonably to comply with the terms of its decree.
>
> For example, a party would not act in good faith and with all reasonable efforts if he did little or nothing to comply with any of the various court orders: excusing each failure by saying to each

court that he could not comply at the same time with some other court's order. Or maybe a district court could determine that a party has not acted in good faith or with all reasonable efforts by failing to comply with its orders that were first in time over later inconsistent orders of other courts. These sketches are just examples.

> We do not decide today whether conflicting orders from other courts will be a complete defense to contempt in this case. But they might be. And evidence about the existence, nature, timing, and so forth of such orders, as well as evidence about steps, if any, the [party] has taken to be relieved from the necessity of obeying these other orders, is material evidence. The district court must consider, along with all the other circumstances, whether compliance with its Decree would cause the party to be in violation of other courts' orders.

*Id.* n. 11.

In light of the foregoing, I conclude that the Trust's apprehensions about the possible consequences of complying with this court's order are exaggerated and not well founded. The direct antecedent to the relief being granted herein was issued long prior to the plan's provision for distribution of "Dana rights." That provision disregards basic principles of judicial administration, and offends fundamental policy considerations regarding consistency, certainty, and finality. It was designed to do that which Judge Potter's injunction declares cannot be done-namely, facilitate suits in a limitless number of courts by countless plaintiffs asserting the same claim, but raising a likelihood of inconsistent judgments. The underlying purpose of the provision, moreover, was to prejudice Dana in its defense of the claims based on the Smith & Kanzler stock purchase agreement.

From my perspective, the Trust has been acting in good faith vis-a-vis its obligations under the plan. It has resisted vigorously the request to enjoin distribution of the "Dana rights," and protested being placed in the position of possibly disobeying one court order in order to comply with a different court order. In view of all these considerations, the likelihood that the Trust might be found in contempt-where to do so would be to endorse claim-splitting, multiplicity of suits, uncertainty, and lack of finality-is very difficult to conceive.

In response to Dana's concerns about multiple lawsuits and inconsistent judgments, the Trust points out that, as a result of the August 29, 1999, summary judgment in Dana's favor, there is, at least pending review by the Sixth Circuit, no potential for litigation in this court, much less elsewhere, based on the indemnity agreement in the stock purchase agreement. Thus, according to the Trust, no injunctive relief against transfer of "Dana liabilities" is needed to avoid those dangers.

The problem with the Trust's argument is that it ignores the utter inability to recreate the status quo (*i.e.*, a single case in a single court) once the "Dana rights" are dispersed to thousands upon thousands of claimants. Even if there is no immediate or even presently perceptible risk that suit based on those rights will be filed, much less filed elsewhere than here, I am persuaded that such dispersal, without more, creates a sufficient potential for irreparable and irredeemable harm to Dana and potentially substantial disruption of the orderly administration of judicial business that injunctive relief is warranted.

Even if the harm to Dana is not potentially immediate, and even if it cannot arise if the summary judgment and injunction are affirmed, the harm to the Trust is even less palpable. No one's interests are served by distribution of worthless rights, and no one is harmed if something of no value is not disseminated. If the Trust prevails in its challenge to the summary judgment decision, it can, if it wishes, seek to have the injunction vacated or amended. That request can be examined in light of the circumstances as they then exist-particularly in light of the additional work needed to adjudicate the remaining issues raised by Dana's summary judgment motion.

Professors Wright and Miller have written that "[p]erhaps the most significant single component in the judicial decision whether to exercise equity jurisdiction and grant permanent injunctive relief is the court's discretion." 11A Fed. Prac. & Proc. Civ.2d § 2942. In reaching my decision, I have undertaken, as they direct, to balance the interests of the parties affected by the decision, and especially "the hardship on plaintiff if relief is denied as compared to the hardship to defendant if it is granted." *Id.*

"[T]he main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy." *Id.* There is simply no available, much less adequate remedy whereby the status quo can be maintained: once changed, it will be lost forever. Even if the risk harm from dispersal may be slight, if it occurs, the damage could ultimately be substantial and beyond remedy. The impact on the Trust is, on balance slight in the extreme; and the risk to the Trust from conflicting court orders appears nearly as slight.

Having found for Dana on the merits, I conclude that I properly and lawfully can and should enjoin the Trust from transferring "Dana rights." Doing so does not, under the present circumstances, create a conflict between this court and the plan of reorganization. Or, if such conflict exists,

it arises as a result of an improper attempt to impair the efficacy of this court's preexisting injunction by a scheme designed and intended to foster multiple litigation in violation of that injunction and contrary to sound and fundamental principles and policies of judicial administration.

## 2. Notice

Dana expresses understandable concern about notifying claimants about the decision on the motion for summary judgment, the pre-existing injunction, and this order. Absent adequate notice, suits may be filed and further proceedings to enforce the injunction needed.

Dana asks that copies of the summary judgment decision and this final order and decree be provided to all claimants, including those, if any, to whom "Dana rights" may already have been transferred.

I do not believe that it is necessary or even desirable to require that the Trust give copies of that decision to claimants. Instead, service of the following notice (or such notice as the parties shall mutually agree is more appropriate) should suffice to communicate the existence and effect of the injunction, summary judgment decision, and this order to the claimants:

### NOTICE

NOTWITHSTANDING ANY PROVISIONS OF THE CELOTEX PLAN OF REORGANIZATION TO THE CONTRARY, NO CLAIMANT UNDER THAT PLAN IS OR WILL BE, PURSUANT TO ORDERS ENTERED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, RECEIVING ANY SO–CALLED "DANA RIGHTS" OR "DANA LIABILITIES".

ACCORDINGLY, THE CELOTEX TRUST IS TRANSFERRING NO RIGHT OR CAUSE OF ACTION WHATSOEVER AGAINST THE DANA CORPORATION TO ANY CLAIMANT.

PURSUANT TO ORDERS OF UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, ANY ATTEMPT TO TRANSFER ANY RIGHT OR CAUSE OF ACTION, OR TO SEEK TO ENFORCE ANY SUCH RIGHT OR CAUSE OF ACTION AGAINST DANA CORPORATION CONTRARY TO THE ORDERS OF THAT COURT WILL BE DEEMED, AND SANCTIONED AS, CONTEMPT OF THAT COURT.

COPIES OF THE PERTINENT ORDERS ARE AVAILABLE ON REQUEST FROM _____

NO CLAIM AGAINST THE TRUST SHALL BE APPROVED OR ALLOWED UNTIL A CLAIMANT, EITHER INDIVIDUALLY OR THROUGH COUNSEL, HAS, BY SIGNING A COPY HEREOF, ACKNOWLEDGED RECEIPT OF THIS NOTICE AND HIS, HER, OR ITS UNDERSTANDING OF ITS TERMS.

### ACKNOWLEDGEMENT

I(WE) HAVE RECEIVED AND READ AND UNDERSTAND THE FOREGOING NOTICE, AND UNDERSTAND THAT WE HAVE NOT RECEIVED AND ARE NOT RECEIVING ANY TRANSFER OF ANY RIGHT OR CAUSE OF ACTION AGAINST THE DANA CORPORATION FROM THE CELOTEX ASBESTOS SETTLEMENT TRUST.

[signature lines, claim identifier, etc.]

Within two weeks of the date of entry of this order the Trust shall send by certified mail return receipt a copy of this notice, with a self-addressed stamped envelope, to persons and entities whose claims against the Trust have been allowed and their counsel. The Trust shall notify such per-

sons that they are, pursuant to this order, to return the signed, duly witnessed or notarized acknowledgment to the Trust within two weeks of its receipt. In the event signed acknowledgments are not returned as required herein, the Trust shall notify the court and counsel for Dana on or before December 15, 1999, of the identities and last known addresses of any persons who fail to return such acknowledgment. On receipt of such notification from the Trust, an order shall issue directing such persons to return the signed acknowledgment forthwith or show cause for their failure to do so.

Prior to allowing any claims after the date of this order, the Trust shall: 1) provide a copy of this notice to the claimant and his, her, or its counsel, and 2) obtain a signed, suitably witnessed or notarized acknowledgment from the claimant.

Dana requests that copies of all materials being sent to claimants be sent to it. In view of the number of potential claimants and the volume of the materials Dana wants sent, this request, if granted, would be unduly burdensome. It also appears unnecessary. What matters is that notice of this court's actions and their consequences will be given to claimants as their claims are allowed. That is the purpose of the foregoing notice and procedures. More is not necessary.

### 3. Other Issues

The Trust has noted objections to certain evidence proffered in support of the request for a permanent injunction. I find that evidence to be relevant, and that the Trust's objections go to its weight, rather than its admissibility.

Dana's proposed final order and decree and its proposed final judgment contain several other requested provisions. I have considered each of these, and, if not incorporated herein, find that they are not needed either to effectuate entry of a final, appealable order or accomplish the pur-

poses of the injunctive relief being issued herein.

### 4. Rule 54(b) Declaration

Counsel for the Trust have advised the court that all of the issues involving the Trust and Dana have been determined and are over and that the matter is ripe for entry of a final judgment and immediate appeal thereafter.

The parties having been heard, and the court being fully advised in the premises, I find that 1) the Trust's claim against Dana is separate and distinct from any remaining claims in these cases, and 2) there is no just reason for delay in entering judgment and allowing an immediate appeal in order to bring this protracted dispute to a prompt resolution.

### Conclusion

Accordingly, it is hereby:

Ordered, adjudged, and decreed that:

1. Judgment be, and it hereby is entered against the Celotex Asbestos Settlement Trust and for the Dana Corporation on the Celotex Asbestos Settlement Trust's claimed right of action against the Dana Corporation for the reasons stated in the summary judgment decision of August 20, 1999;

2. The Dana Corporation's request for a declaratory judgment be, and it hereby is granted, and it is hereby declared that the Celotex Asbestos Settlement Trust has no right of action against the Dana Corporation, and the Dana Corporation has no liability to the Celotex Asbestos Settlement Trust, in the Celotex Asbestos Settlement Trust's capacity as assignee or transferee of the Celotex Corporation;

3. The Celotex Asbestos Settlement Trust, including its trustees, officers, agents, employees, attorneys, representatives, instrumentalities, successors, as-

signs, and privies, be, and it is and they hereby are:

a) permanently enjoined from representing to any asbestos claimant against the Celotex Asbestos Settlement Trust that the Celotex Asbestos Settlement Trust has any right of action against the Dana Corporation to assign, transfer, or otherwise to convey; and

b) to provide the notice and obtain the acknowledgment of its receipt as set forth herein;

4. Assignees from the Celotex Asbestos Settlement Trust, and any person or entity acting pursuant to a subsequent assignment by the initial assignee or in concert with, in privity with, on behalf of, or as the agent, employee, attorney, representative, instrumentality, successor, or privy of such assignee, be, and hereby are permanently enjoined from instituting or prosecuting, directly or indirectly, in any tribunal or court (federal, state, foreign, or otherwise) other than this court, any action or claim against the Dana Corporation (or any of its subsidiaries or related corporations or insurers) based on any right of action putatively assigned or otherwise derived or obtained from or through the Celotex Asbestos Settlement Trust.

The Clerk of the Court shall, pursuant to Fed. R. Civ. P 54(b), enter final judgment in this cause.

So ordered.